48 P.3d 1032 (2002)
112 Wash.App. 370
In re the Marriage of Wendy CLARKE, Respondent,
v.
Michael CLARKE, Appellant.
No. 27220-2-II.
Court of Appeals of Washington, Division 2.
June 28, 2002.
*1033 Stephen Frederick Frost, Bellevue, for Appellant.
Charles Creason, Michael Kirk, Poulsbo, for Respondent.
QUINN-BRINTNALL, J.
Michael Clarke appeals from an order increasing the child support obligation for his three children from $956 to $1,537 per month. Michael claims that the commissioner committed two errors during the modification hearing. First, he claims error in the court's ruling that Wendy Clarke was not voluntarily underemployed when she reduced her hours by 20 percent. Second, he claims that because the parents' combined income is greater than the $7,000 maximum computed on the child support schedule, the commissioner erred by extrapolating the child support calculation based on the actual total net income of $8,500. We hold that the commissioner's ruling that Wendy was not voluntarily underemployed was proper and that his decision to extrapolate the child support calculation to reflect the parents' actual income was a reasonable exercise of his discretion. Thus, we affirm.

*1034 FACTS
Wendy and Michael[1] divorced several years ago. They have three children, B.C., A.C., and H.C. At the time of the modification hearing, the children were ages 13, 9, and 7, respectively. When B.C. turned 12 years old, Wendy petitioned the court for an increase in child support under the statutory guidelines.[2] There were also additional childcare expenses at issue. Michael opposed the motion. He disputed Wendy's income and asked the court to use the lower presumptive amount of child support from the statutory schedule at the $5,000 level. On January 23, 2001, Michael submitted a follow-up declaration claiming that Wendy was voluntarily underemployed by 20 percent.
A Kitsap County Superior Court Commissioner conducted two hearings on the matter. The first was held on January 29, 2001; the second, on February 9, 2001.[3] He noted the combined total net income for the parties was more than $8,500 per month ($5,038.56 for Michael and $3,557.26 for Wendy), which is greater than the $7,000 maximum calculated in the advisory portion of the statutory child support schedule.
In calculating the appropriate support, the commissioner considered three options: (1) use the presumptive statutory child support amount at the $5,000 net income, as Michael requested; (2) use the advisory child support amount calculated at the $7,000 net income level; or (3) extrapolate the child support amount based on the parties' actual net monthly income of $8,500. The commissioner decided to extrapolate the child support to an amount appropriate for $8,500 unless Michael established that the resulting support was unduly burdensome.
My judgment on those types of issues is that a party seeking to have a variance from the indicated maximum advisory amount or the indicated extrapolated amount, must demonstrate some exceptional reason to vary from those amounts. In other words, I put the show ... the onerous on the party seeking to avoid the imposition of the amount indicated by the Commission's schedule.
Report of Proceedings (1/29/01) at 23. The Order of Child Support states, "The obligor has failed to demonstrate why the extrapolated amount should not be utilized." Clerk's Papers at 176. He also made oral findings to support the extrapolated amount.
That, which is offered today is ... it's always been a presumptive amount [$5,000], which is not persuasive to me and that we have a disparity in income and that we have a logistical change back and forth in terms of the cost associated with separate households and keeping the bedroom here and the bedroom there and so forth. Those are not persuasive as a basis upon which to avoid the imposition of the extrapolated amount and I will adopt the extrapolated amount.
Report of Proceedings (1/29/01) at 23-24. The parties dispute whether the commissioner's findings are sufficient.
The commissioner also addressed whether Wendy was voluntarily underemployed and whether additional income from her unworked hours and her new husband should be imputed to her. At the time of the hearing, Wendy was working as a nurse and had reduced her work hours by 20 percent to spend more time with her children (the three from her marriage to Michael and a newborn from her current marriage). Her attorney presented evidence that although she reduced the number of her working hours per week, her income was essentially the same because of night shift wage differentials.
*1035 The court made the following oral findings about Wendy's employment at the hearing:
Now, there's an argument that she is voluntarily under-employed. I don't find that to be the case. She has a highly skilled field for which her flexibility and in-flexibility, by reason of the employment, demands of the job are such she has this differential in shifts and I do not find that she is voluntarily under-employed as that term is defined by the statute. She's working to optimize both her income as well as her time with her kids, which is some ... sometimes problematic in view of her work schedule.
Report of Proceedings (1/29/01) at 21-22.
The commissioner concluded that Wendy was not voluntarily underemployed. He then calculated the child support by extrapolation, increasing the parents' support obligation by approximately $1,000 per month for all three children ($581 (Michael) and $545 (Wendy)).[4] The total of Michael's support obligation is $1,537, less than a third of his monthly net income.
Michael's appeal presents the following issues: (1) Did the court err by ruling that Wendy was not voluntarily underemployed? (2) Was the court required to include Wendy's husband's income in its calculation of child support for Wendy and Michael's three children? (3) Did the commissioner abuse his discretion by extrapolating from the presumptive and advisory guidelines to calculate child support? And (4) were the commissioner's findings sufficient to sustain the extrapolated support amount?

ANALYSIS
STANDARD OF REVIEW
This court reviews child support modifications and adjustments for abuse of discretion. In re Marriage of Griffin, 114 Wash.2d 772, 776, 791 P.2d 519 (1990). We will uphold the trial court's child support calculation unless there is a manifest abuse of discretion. In re Marriage of Mattson, 95 Wash.App. 592, 599, 976 P.2d 157 (1999).
IMPUTING INCOME
VOLUNTARY UNDEREMPLOYMENT
Voluntary unemployment or underemployment does not shield a parent from child support obligations. In re Marriage of Shellenberger, 80 Wash.App. 71, 81, 906 P.2d 968 (1995). Instead, the court shall impute income to a parent when the parent is voluntarily unemployed or voluntarily underemployed and calculate the parent's support obligation accordingly. The court shall determine whether the parent is voluntarily underemployed or voluntarily unemployed based upon that parent's work history, education, health, and age, or any other relevant factors. RCW 26.19.071(6). Voluntary unemployment is not defined in the child support statute; rather this court "found the usual and ordinary meaning of that term to be unemployment that is brought about by one's own free choice and is intentional rather than accidental ...." In re Marriage of Brockopp, 78 Wash.App. 441, 446 n. 5, 898 P.2d 849 (1995). In deciding whether a parent is voluntarily underemployed, the trial court should look at the level of employment a parent is capable and qualified to perform. In re Marriage of Sacco, 114 Wash.2d 1, 4, 784 P.2d 1266 (1990).
Two examples of voluntary underemployment are instructive. In In re Marriage of Pollard, 99 Wash.App. 48, 54, 991 P.2d 1201 (2000), Division Three of this court held that a full-time mother and homemaker did not have "gainful" employment and thus she was underemployed pursuant to RCW 26.19.071(6). And in In re Marriage of Wright, 78 Wash.App. 230, 234, 896 P.2d 735 (1995), this court held that the parent working half-time as a nurse could have obtained full-time employment. Although that parent was also the primary caretaker of five young children and was a member of the National Guard, this court concluded the trial court did not abuse its discretion in finding that a parent was voluntarily underemployed by working half-time.
*1036 Michael argues to this court that Wendy is voluntarily underemployed because she reduced her number of work hours by 20 percent after the birth of her fourth child. Wendy counters that her shift pay results in no change in her income, only the amount of hours, and that therefore, she is not underemployed.
On the facts of this case, we hold that the trial court did not abuse its discretion when it refused to find Wendy was voluntarily underemployed and then did not impute income to her. The record established that although Wendy transferred to the night shift, her salary did not change. First, she testified that she decreased her hours from 100 percent to 80 percent. Her attorney then stated that while her hours were shorter, the amount earned did not decrease due to shift differential pay. When Michael questioned him at the second hearing, the commissioner clarified:
She may, indeed, have been working 80% of the hours otherwise that were there, but she had made a choice because of the sleeping and the kids and so forth, to work more onerous hours to make up that pay differential so the net result was she was [making] the same type of pay, if not a little bit more than she would have otherwise had she been working full ... as you put it 100%.
Report of Proceedings (2/9/01) at 16. The court then declined to find Wendy was voluntarily underemployed.
Because there is substantial evidence in the record that Wendy's net income did not change, even though she worked 20 percent fewer hours, it supports the commissioner's finding in this case. Moreover, Wendy's earnings remained the same, which distinguishes this case from Pollard and Wright. Thus, we affirm the commissioner's finding that Wendy is not voluntarily underemployed and no income should be imputed to her.
HUSBAND'S INCOME
Michael also argues the trial court should have considered the income of Wendy's husband in calculating the child support. Specifically, he asks this court to impute gross monthly income to Wendy in the amount of $6,462. This claim is meritless. While the worksheet disclosed her new husband's income, the court correctly disregarded the information for calculating child support. See RCW 26.19.071(1) ("Only the income of the parents of the children whose support is at issue shall be calculated for purposes of calculating the basic support obligation.").
CHILD SUPPORT GUIDELINES
In establishing the child support schedule, the legislature intended to insure that every child support award satisfies the child's basic needs and provides additional financial support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001; In re Marriage of Leslie, 90 Wash.App. 796, 803, 954 P.2d 330 (1998), review denied, 137 Wash.2d 1003, 972 P.2d 466 (1999). The legislature also intended to equitably apportion the child support obligation between both parents. RCW 26.19.001; In re Marriage of Ayyad, 110 Wash.App. 462, 467, 38 P.3d 1033 (2002).
The maximum net combined monthly income calculated on the statutory child support schedule is $7,000. However, the statute contemplates imposing higher support payments for combined incomes exceeding that amount:
The economic table is presumptive for combined monthly net incomes up to and including five thousand dollars. When combined monthly net income exceeds five thousand dollars, support shall not be set at an amount lower than the presumptive amount of support set for combined monthly net incomes of five thousand dollars unless the court finds a reason to deviate below that amount. The economic table is advisory but not presumptive for combined monthly net incomes that exceed five thousand dollars. When combined monthly net income exceeds seven thousand dollars, the court may set support at an advisory amount of support set for combined monthly net incomes between five and seven thousand dollars or the court may exceed the advisory amount of support set for combined monthly net incomes *1037 of seven thousand dollars upon written findings of fact.
RCW 26.19.020 (emphasis added). Because the amounts in this case are greater than those presumptively calculated in the statute, the table is advisory for those amounts in excess of calculations at the $5,000 level.
On appeal, Michael appears to have retreated somewhat from his initial claim that the trial court was required to set his support obligation at the presumptive ($5,000) level. Therefore, we focus our review on whether the commissioner abused his discretion by exceeding the advisory amount of support set for combined monthly net incomes in excess of $7,000.[5]
Michael argues that the child support statute does not give any "meaningful direction" to the trial court to decide child support when the net monthly income is greater than $7,000.[6] Wendy counters that the trial court has discretion to extrapolate support obligation amounts for incomes greater than $7,000. Because the statute expressly invites the court to extrapolate from the existing schedule when the parents' income exceeds the amounts calculated in the schedule, we agree with Wendy.
Extrapolation is a predictable "process of estimating an unknown number outside the range of known numbers." BLACK'S LAW DICTIONARY (6th Ed.1990) 587. In this case, the legislature established the necessary "known numbers" by enacting the child support schedule. The legislature created a presumptive schedule for combined net monthly incomes up to $5,000 only. And it provided that when combined monthly net income exceeds $5,000, support shall not be set at an amount lower than the presumptive amount of support set for combined monthly net incomes of $5,000 unless the court finds a reason to deviate below that amount. RCW 26.19.020. For combined net monthly incomes greater than $5,000 but less than $7,000 the statutory schedule is "advisory" rather than presumptive. RCW 26.19.020. The schedule does not cap a parent's child support obligation. Rather it grants the court express authority to exceed by extrapolation the amount calculated in the child support schedule when the parents' combined net monthly incomes exceed $7,000.
In setting the child support obligation, the court must enter written findings of fact, whether the court: (a) sets the support at the presumptive amount, for combined monthly net incomes below $5,000; (b) sets the support at an advisory amount, for combined monthly net incomes between $5,000 and $7,000; or (c) deviates from the presumptive or advisory amounts. RCW 26.19.035(2). Likewise, "[w]hen combined monthly net income exceeds seven thousand dollars, ... the court may exceed the advisory amount of support set for combined monthly net incomes of seven thousand dollars upon written findings of fact." RCW 26.19.020 (emphasis added). See Leslie, 90 Wash.App. at 804, 954 P.2d 330 (child support amount rejected where "the trial court's findings and conclusions do not evince such a comprehensive examination" of parents' standard of living, resources, and income).
Michael next argues that the trial court erred when it failed to enter written findings of fact to justify the use of the extrapolated child support payment. And he claims that the trial court was required to find that Wendy had proved extraordinary (unusual medical or special needs type) circumstances *1038 warranting support in an amount greater than the presumptive amount for $5,000 combined income or the advisory amount for $7,000 combined income contained in the schedule.
We note that the original order presented to the commissioner contained the following language: "Obligor will still have sufficient income to operate his household and the mother's household has significant child related expenses." Clerk's Papers at 175-76. This proposed finding is consistent with the commissioner's oral findings at the prior hearing. The record indicates that Michael, who was representing himself pro se at that time, telephoned the court and requested the above finding be deleted on March 7, 2001.[7]
The commissioner complied with Michael's request and then signed the amended order on March 9, 2001. In its final form, the commissioner's finding states "good grounds exist to use the extrapolated amount." Clerk's Papers at 175. Although the finding of good grounds is very cursory, the remaining record is sufficient to support the court's extrapolation.
RCW 26.19.065 sets forth the standards for establishing lower and upper limits on child support amounts. It provides as follows:
(1) Limit at forty-five percent of a parent's net income. Neither parent's total child support obligation may exceed forty-five percent of net income except for good cause shown. Good cause includes but is not limited to possession of substantial wealth, children with day care expenses, special medical need, educational need, psychological need, and larger families.
Here, the court's order on support required Michael to pay less than 30 percent of his net income to support his three children. Because the amount ordered was less than 45 percent, RCW 26.19.065(1) does not require the trial court to find that Wendy had proved that the children had special medical, educational, or psychological needs.
In issuing its ruling, the trial court examined Michael's request for imposition of the presumptive limit and stated:
That, which is offered today, is ... it's always been a presumptive amount, which is not persuasive to me and that we have a disparity in income and that we have a logistical change back and forth in terms of the cost associated with separate households and keeping the bedroom here and the bedroom there and so forth. Those are not persuasive as a basis upon which to avoid the imposition of the extrapolated amount and I will adopt the extrapolated amount.
Report of Proceedings (1/29/01) at 23-24. The court then entered an Order of Child Support using WPF DR 01.0500 (22 WASH. PRACT. FAMILY AND COMMUNITY PROPERTY LAW HANDBOOK at 572 (2001)), stating:
The parents' combined monthly net income exceeds $7,000 and the court sets child support in excess of the advisory amount because: good grounds exist to use the extrapolated amount. The obligor has failed to demonstrate why the extrapolated amount should not be utilized.
Clerk's Papers at 175.
Although more specific findings are preferred, the absence of such findings does not require vacation of the court's order. See In re Marriage of Crosetto, 82 Wash.App. 545, 560, 918 P.2d 954 (1996) ("[T]he lack of a trial court's specific findings is not fatal, and in the absence of a finding on a particular issue, an appellate court may look to the oral opinion to determine the trial court's basis for the deviation.") Here, viewing the record as a whole in light of the purposes and limitations set forth in the statute, we hold that the trial court did not abuse its discretion in ordering Michael to pay $1,537 a month towards the support of his three children. See also In re Marriage of Sievers, 78 Wash.App. 287, 308, 897 P.2d 388 (1995) (court's award of child support in amount of $3,000 per child per month was not abuse of discretion; appellate court will defer to trial court's determination *1039 for amounts beyond the statutory child support schedule).
BURDEN SHIFTING
Michael also objects to the trial court's placing on him the burden of challenging the court's calculation of child support through extrapolation. RCW 26.09.170(1) requires the moving party seeking a modification of a child support order to show a substantial change of circumstances. Here, Wendy satisfied that burden when she petitioned and proved that the couple's oldest child was age 12. RCW 26.19.020; In re Marriage of La-Douceur, 58 Wash.App. 12, 18, 791 P.2d 253 (1990) (a child who "graduates" into the next level of support under the statute qualifies as a substantial change in circumstances).
Nothing in the child support statute imposes an additional burden when the court extrapolates the child support amount. But RCW 26.19.065 does contemplate that good cause for establishing upper limits of support include "possession of substantial wealth," a factor most likely relevant in extrapolation circumstances. Thus, so long as it does not exceed 45 percent of the combined monthly net incomes, does not base its decision on untenable grounds or untenable reasons, and enters sufficient findings of fact, a trial court may exceed by extrapolation the advisory amount of support set for combined monthly net incomes of $7,000. RCW 26.19.020 and .065(1).
Here, the commissioner determined that capping the three children's support at an amount based on an income calculation of $3,500[8] less than that actually available to the children's parents was unreasonable absent a showing of hardship. The commissioner then gave Michael the opportunity to challenge his decision to base support on an amount extrapolated from the schedule to their actual net income. Generally, one asserting a fact has the burden of proving it. In re Marriage of Gainey, 89 Wash.App. 269, 274, 948 P.2d 865 (1997). Michael has not met his burden of demonstrating to this court that the trial court's decision was manifestly unreasonable, based on untenable grounds, or granted for untenable reasons. See In re Marriage of Peterson, 80 Wash.App. 148, 152, 906 P.2d 1009 (1995), review denied, 129 Wash.2d 1014, 917 P.2d 575 (1996). Thus, we affirm.
We concur: ARMSTRONG, J., and HUNT, C.J.
NOTES
[1] The first names of the parties are used for the ease and clarity of the reader.
[2] The statute computes support for children aged 0-11 under Schedule A and for children 12-18 under Schedule B. RCW 26.19.020. Schedule B amounts are higher than Schedule A.
[3] Although the initial request for modification stemmed from B.C.'s turning age 12 and the additional household expenses, the court asked for clarification of whether the modification request was for one child or for all three children. Michael's attorney responded that the court had the power to review the support for all three children and then stated, "I think you need to look at the whole picture." Report of Proceedings (1/29/01) at 17.
[4] According to Wendy, Michael was required to pay $546 per month for his eldest child and $512 per month for each of the younger children. But we note this is $1,570 not $1,537 as the trial court ordered.
[5] In this case, the child support was initially set using the presumptive $5,000 combined monthly net income calculation for all three children (when they were all below 12 years old). This amounted to $479 each. At that same combined monthly net income level, the child support for the oldest child would have increased to $592 when he became 12 years old. RCW 26.19.020. Using the $7,000 combined monthly net income calculation, the child support for the two younger children would be $639 each and $790 for the 12 year old. Instead, the commissioner extrapolated, resulting in higher figures, namely $754.26 for each of the younger children and $932.49 for the 12 year old.
[6] Michael also argues briefly that the trial court erred when it did not place the burden on the "moving party that is trying to deviate from the `presumptive' amount of child support." Br. of Appellant at 12. Michael misuses the term "deviate" in this instance. RCW 26.19.011(4) defines "deviation" as a "child support amount that differs from the standard calculation." Because there is no standard calculation above $7,000, there can be no deviation in this case.
[7] We are not asked to address whether Michael invited the insufficient findings of which he now complains.
[8] Michael claims that setting child support by extrapolation results in an advance award of a child's inheritance and is prohibited. While we find no error in this case, we recognize that in cases involving extreme wealth a pure mathematical extrapolation may result in a child support calculation so great as to exceed a child's support expenses. An inordinately high child support calculation could work as a "draw" on a child's future inheritance and, as such, exceed the legislature's intent for child support. "[A] court may exceed the support provided by the schedule `commensurate with the parents' income, resources, and standard of living,' and consistent with legislative intent after considering the totality of the financial circumstances." In re Marriage of Scanlon, 109 Wash.App. 167, 176-77, 34 P.3d 877 (2001) (citation omitted); RCW 26.19.001. Here, the court ordered Michael to pay $1537 towards the support of his three children. This amount is consistent with support and inconsistent with a "draw" on their inheritance as Michael claims. See e.g. Sievers, 78 Wash.App. at 308, 897 P.2d 388 (large child support award not abuse of discretion when consistent with parents' lifestyles).