[No. 52543-3-I.   Division One.   August 23, 2004.]

*In the Matter of the Marriage of* TERRI L. RUSCH, *Respondent,* and ROBERT J. RUSCH, JR., *Appellant.*

228

*Gregory D. Esau*, (of *Ellis, Li & McKinstry*); *Bradley K. Crosta* (of *Crosta & Bateman*); and *Kenneth G. Christensen*, for appellant.

*Kathryn Jenkins*, for respondent.

¶1 PER CURIAM — Robert Rusch appeals a commissioner's order modifying his child support obligation. He argues that the commissioner improperly extrapolated the child support table to calculate the child support obligation. Because the trial court failed to enter findings of fact concerning the basis of using an extrapolated child support obligation, we reverse and remand for the trial court to consider whether a factual basis exists for the use of an extrapolated obligation and, if it so decides, to enter findings that support setting child support at a level exceeding the standard calculation.

I

¶2 A court dissolved Robert and Terri Rusch's marriage in April 2002. At the time of dissolution, Robert and Terri had been married for 10 years and had two young children. Through mediation they agreed to a parenting plan and

child support agreement. The parenting plan provided for residential time split roughly evenly between the parents.[1]

¶3 Robert and Terri's combined income exceeded $7,000, the highest figure listed on the economic table.[2] Robert agreed to pay $2,000 per month in child support for their two children. The child support worksheet submitted by the parties at dissolution listed the total child support obligation as $767 per child—the maximum amount listed on the child support schedule.

¶4 Shortly after the dissolution, Robert's employer reduced his salary by nearly one-third. Robert attempted to informally negotiate and reduce his child support payments. After this failed, Robert petitioned the court for a modification due to a substantial change in circumstances. The commissioner heard the modification petition in a trial by affidavit.

¶5 The new child support worksheet signed by the commissioner listed the basic child support obligation at $1,260.05 per child. The court denied his request to factor in child support obligations for postsecondary education for other children, and declined to take residential placement into account. Robert also unsuccessfully requested that the court reduce his income listed on the worksheet because some of the salary he received was reimbursement for travel expenses.

¶6 The court determined that Robert's net monthly income was $8,381.35. The court ordered that he pay 69 percent of the total monthly support obligation, based on his percentage of the combined total earning. This reduced his monthly obligation from $2,000 to $1,701.86. Robert appeals the court's calculation.

---

[1] The plan provides 47 percent residential time with Robert.

[2] RCW 26.19.020.

## II

■ ¶7 We review an order modifying child support for abuse of discretion.[3] A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.[4] A court also necessarily abuses its discretion if its decision is based on an erroneous view of the law.[5]

■ ¶8 Robert first argues that the court erred by failing to enter specific findings of fact when the court ordered a child support payment exceeding the economic table's maximum amount. The legislature enacted the child support schedule statute to ensure that child support orders were adequate to meet a child's basic needs.[6] The legislature also intended "to provide additional child support commensurate with the parents' income, resources, and standard of living."[7]

¶9 When ordering child support, the trial court determines the "standard calculation" child support level from the economic table.[8] RCW 26.19.020 sets forth the economic table from which basic child support obligations for dependent children are determined. The amount of support is based upon the combined net income of both parents. Each parent's respective obligation for the basic child support amount is based on their proportionate share of the combined net income.[9]

■ ¶10 The table provides standard calculation figures only up to the parties' combined monthly income of $7,000. When combined incomes exceed $7,000, RCW

---

[3] *In re Marriage of Schumacher*, 100 Wn. App. 208, 211, 997 P.2d 399 (2000).

[4] *Schumacher*, 100 Wn. App. at 211.

[5] *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993).

[6] *In re Marriage of Leslie*, 90 Wn. App. 796, 803, 954 P.2d 330 (1998).

[7] RCW 26.19.001.

[8] RCW 26.19.020; *see also In re Marriage of Maples*, 78 Wn. App. 696, 700, 899 P.2d 1 (1995).

[9] Ch. 26.19 RCW.

26.19.065(3) provides that a court may set support at the advisory amount listed in the table for incomes between $5,000 and $7,000, or it may exceed the advisory amount upon written findings of fact:

> The economic table is advisory but not presumptive for combined monthly net incomes that exceed five thousand dollars. When combined monthly net income exceeds seven thousand dollars, the court may set support at an advisory amount of support set for combined monthly net incomes between five thousand and seven thousand dollars or the court may exceed the advisory amount of support set for combined monthly net incomes of seven thousand dollars upon written findings of fact.[10]

When determining a child support obligation for parents whose combined net monthly income exceeds the statutory economic table, a trial court is not limited to the maximum amount of support provided at the high end of the table.[11] Instead, the court may "exceed" the table amounts, but only upon written findings of fact.[12]

¶11 Terri relies on *In re Marriage of Clarke*,[13] for the proposition that "the statute expressly invites the court to extrapolate from the existing schedule when the parents' income exceeds amounts calculated in the schedule."[14] The *Clarke* court also explained that an absence of specific findings to support the extrapolated amount is not fatal.[15] Both propositions are questionable. First, the statute does not expressly invite the court to exceed the statutory amount. Second, the statute specifically requires that when exceeding the statutory amount, the court must enter written findings of fact.

---

[10] RCW 26.19.020; *see also* RCW 26.19.065(3).

[11] *Leslie*, 90 Wn. App. at 804.

[12] *See* RCW 26.19.020.

[13] 112 Wn. App. 370, 48 P.3d 1032 (2002).

[14] *Clarke*, 112 Wn. App. at 379.

[15] *Clarke*, 112 Wn. App. at 380-81 (explaining that "[a]lthough the finding of good grounds is very cursory, the remaining record is sufficient to support the court's extrapolation").

¶12 The findings must explain why additional support is necessary. Contrary to *Clarke*, cursory findings are not sufficient. Factors that the court should consider include the standard of living of each parent, and special medical, educational, or financial needs of the children. Under the reasoning in *Clarke*, if a noncustodial parent's net monthly income was $50,000 per month, then any level of support below 45 percent of that figure would not require specific findings. Extrapolation programs do not base calculations on economic data. Instead, they merely extend the numbers on the table out to the appropriate income level and provide a child support number. Therefore, the figures provided by the extrapolation program are not based on the child's specific, articulable needs. They merely continue the economic table past the $7,000 mark. Had the legislature intended this result, the legislature would not have capped the table at $7,000.

¶13 Using an extrapolated amount also implies a presumption that the extrapolated amount is the correct amount. This forces the challenging party to bring forth evidence challenging that number and places the burden on the obligor to show why the extrapolated amount is not appropriate.[16] Using an extrapolated figure without more presumes that the extrapolated amount is a right of the requesting party, regardless of need. But if the children do not have a need for child support exceeding the statutory maximum, the court cannot award child support exceeding the advisory number.

¶14 Because the trial court did not enter any findings to support an extrapolated amount of child support, we remand for specific findings supporting an extrapolated amount. We note that adding "good grounds exist to use the extrapolated amount," as the trial court did in *Clarke*, is not sufficient.[17]

---

[16] *Clarke*, 112 Wn. App. at 381.

[17] *See Clarke*, 112 Wn. App. at 380 (quoting the commissioner's findings that Court of Appeals found sufficient to support extrapolated amount).

¶15 Robert argues that the trial court failed to properly complete support worksheets because the court omitted several assets and obligations. Specifically, he challenges the omission of party assets, a postsecondary child support obligation Robert owed to children from a prior marriage, and omission of business expenses from the worksheet.

¶16 While Robert is correct that the worksheets are mandatory and must be completed, we may nevertheless look to the record to determine if the record supports the trial court's decision. And Robert is not claiming errors; rather he is arguing that the trial court failed to completely fill out the worksheets. Because specific findings and other evidence support the trial court's findings, the trial court's failure to complete worksheets is not reversible error.

¶17 To succeed on a motion to modify child support, the moving party must show a substantial change of circumstances since the entry of the dissolution decree.[18] Once the trial court concludes that there has been a substantial change and opens a modification proceeding, the court may look to all aspects of the support order. Whether a substantial change of circumstances has occurred is a question of fact within the trial judge's discretion.[19]

¶18 Robert argues that by failing to account for homes in the child support worksheet, the court committed reversible error. The net worth of each party was roughly the same— $229,000 for Terri and $234,000 for Robert. There was no evidence that either party had suffered a substantial change in assets. Although the court did not fully fill out the worksheet with this information, evidence before the court showed substantially similar assets.[20]

¶19 Robert claims that the court erred by not considering a separate child support obligation to provide for postsecondary education. RCW 26.19.075 provides that

---

[18] RCW 26.09.170.

[19] *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965).

[20] We note that the court did include Terri's liquid assets in the worksheet.

a court may deviate from the standard calculation when a parent owes a duty of support to children from another relationship. The decision to deviate is discretionary. Contrary to Robert's claim, the court did consider the separate child support obligations, and denied the request for a downward deviation. In doing so, the court found that no downward deviation was justified "because the children of this relationship have the need for this level of support." The court's decision was not an abuse of discretion under the circumstances. We note that the request may be renewed on remand.

¶20 Robert argues that the trial court improperly refused to include his business expenses as an offset to his income. RCW 26.19.071 requires a trial court to deduct normal business expenses and self-employment taxes for self-employed persons.[21]

¶21 On his pay earnings statements presented to the commissioner, Robert's earnings are broken down into several categories—"regular earnings," "draw," "travel," "holiday," and "leave." Under the portion denoted "travel," he receives $288.46 per week. There is no notation explaining what this covers.

¶22 Robert supplied the court with his 2001 federal income tax return. But he did not provide pay stubs or a W-2 for this tax year, nor did he itemize any travel deductions for this year. Accordingly, we cannot determine whether the $288.46 per week was taxable income or a nontaxable reimbursement for business expenses incurred. If it is not taxable income, then the commissioner should have deducted this from his income. Absent evidence that this was a nontaxable reimbursement, he cannot claim this as a downward adjustment.

¶23 The trial court specifically found that Robert was not entitled to a deduction for normal business expenses because he did not report business expenses on his federal

---

[21] RCW 26.19.071(5)(h). The section also provides that "[j]ustification shall be required for any business expense deduction about which there is disagreement."

income tax returns. Although Robert did not provide adequate documentation supporting this as a deduction, the trial court's conclusion is incorrect because if the employer were reimbursing him, then he could not claim the deduction on his tax return. When expenses are included as a reimbursement on an employee's paycheck, it is proper to exclude this portion because this payment is an offset for expenses. To the extent that he was reimbursed for expenses, that income should be deducted from his monthly income. On remand the trial court must clarify whether Robert's business expenses are income and adjust his income accordingly.

¶24 Robert next argues that the commissioner erred by failing to account for residential time when calculating his support obligations. The decision to deviate from the standard calculation based on residential time is discretionary. And the statute provides that the court cannot deviate if the deviation will result in insufficient funds in the household receiving the support.[22] Here, the court denied his request because a reduction in support for the children would result in insufficient funds. Accordingly, the court did not err by refusing to apportion child support based on residential time.

¶25 Robert challenges the trial court's decision awarding attorney fees to Terri. He argues that the court did not enter specific findings outlining the parties' ability to pay, merely stating its conclusion without considering the underlying law. RCW 26.09.140 governs cost and attor-

---

[22] RCW 26.19.075(1)(d). The statute provides:

The court may deviate from the standard calculation if the child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

ney fee awards in domestic relations proceedings, such as child support modifications:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.[23]

In considering the financial resources of both parties, the court balances the needs of the requesting party against the other party's ability to pay.[24] An award under this provision is discretionary,[25] and neither spouse is entitled to attorney fees as a matter of right.[26]

¶26 The court looked to Terri's liquid assets and concluded that based on her current unemployment, Robert could afford to pay a portion of her attorney fees. Moreover, the commissioner required him to reimburse her at a rate of $100 per month until he had paid the $2,500. Under the circumstances, the trial court did not err in awarding Terri fees.

¶27 Robert seeks costs and attorney fees on appeal under RAP 18.1. Determining whether a fee award is appropriate requires the court to consider the parties' relative ability to pay.[27] We also examine the arguable merit of the issues raised on appeal.[28] Considering these

---

[23] RCW 26.09.140.

[24] *State ex rel. Stout v. Stout*, 89 Wn. App. 118, 126, 948 P.2d 851 (1997); *In re Marriage of Nelson*, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991).

[25] *Nelson*, 62 Wn. App. at 521.

[26] *In re Marriage of Sheffer*, 60 Wn. App. 51, 59, 802 P.2d 817 (1990).

[27] *In re Marriage of Trichak*, 72 Wn. App. 21, 26, 863 P.2d 585 (1993).

[28] *Stout*, 89 Wn. App. at 127.

factors, we decline to award attorney fees to either party on appeal.

¶28 Reversed and remanded.