IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | |
|---|---|
| In the Matter of the Parentage and Support of ) | |
| ) | No. 34975-6-III |
| N.R.M. ) | |
| ) | |
| Child, ) | |
| ) | |
| KAYLA VALLEE, ) | UNPUBLISHED OPINION |
| ) | |
| Respondent, ) | |
| ) | |
| and ) | |
| ) | |
| DUANE MOORE, ) | |
| ) | |
| Appellant. ) | |

KORSMO, J. — Duane Moore, representing himself, appeals the outcome of the

trial determining the visitation and support obligations for N.R.M., his child with

respondent Kayla Vallee. The appeal presents numerous arguments concerning the

support obligation, the parenting plan, a sanction imposed on Mr. Moore at trial, and the

denial of reconsideration. Addressing the arguments by the four topics noted above, we

affirm.[1]

---

[1] In addition to ordering the claims differently than the parties do, we reformulate
several of the appellant's arguments.

No. 34975-6-III
*Vallee v. Moore*

PROCEDURAL HISTORY[2]

The parents sometimes lived together and sometimes maintained separate households during their relationship. After the relationship ended, the couple was unable to communicate productively or agree on visitation terms, although both parents recognized the importance of the other parent in the baby's life. On one occasion, Moore took the child home from daycare and denied Vallee access to the 18 month old, telling her to obtain a parenting plan. She then filed suit.

The matter ultimately went to trial before the Honorable Bryan Chushcoff after failed attempts at negotiating a resolution of the case. Each party asked the court to adopt their respective proposed parenting plan. At the conclusion of the trial, the court took the matter under advisement. The following week, Judge Chushcoff filed a parenting plan and a support order. The court also imposed $2,000 in sanctions against Mr. Moore for intransigence during the failed settlement negotiations.

Mr. Moore sought reconsideration on several bases, including a contention that the trial judge had not properly weighed the strength of his bond with the child. He reiterated his request for greater weekend visitation with the child. The court corrected some minor

---

[2] Most of the facts concerning the relationship and the trial court's ruling are not relevant to this appeal, but additional facts will be discussed as necessary in conjunction with our discussion of some of the issues.

typographical errors in the order, but otherwise denied reconsideration. Mr. Moore then

filed this appeal.

## ANALYSIS

We will address the claims raised by Mr. Moore in accordance with the subject

matter of his arguments. First, we will address the support obligation order before

turning to the parenting plan, sanction, and reconsideration arguments.

Initially, it is appropriate to remember these words of wisdom concerning the

importance of finality in domestic relations rulings:

> We once again repeat the rule that trial court decisions in a
> dissolution action will seldom be changed upon appeal. Such decisions are
> difficult at best. Appellate courts should not encourage appeals by
> tinkering with them. The emotional and financial interests affected by such
> decisions are best served by finality. The spouse who challenges such
> decisions bears the heavy burden of showing a manifest abuse of discretion
> on the part of the trial court.

*In re Marriage of Landry*, 103 Wn.2d 807, 809, 699 P.2d 214 (1985). This emphasis on

finality and moving forward is reflected in the well-settled standards that govern review

of domestic relations cases. Discretion is abused when it is exercised on untenable

grounds or for untenable reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482

P.2d 775 (1971). A court acts on untenable grounds when its factual findings are not

supported by the record; it acts for untenable reasons if it uses an incorrect standard of

law or the facts do not meet the requirements of the standard of law. *State v. Rundquist*,

79 Wn. App. 786, 793, 905 P.2d 922 (1995).

3

*Support Obligation*

Mr. Moore contends that the trial court erred in entering the support order by (1) including information from a different case, (2) failing to grant a deviation, and (3) calculating the obligation on the basis of evidence presented at trial instead of using post-trial information. These contentions lack merit.

The law governing these challenges is clearly settled. Child support is set by statute and the statutory scheme divides the support obligation proportionately to the parents' respective income levels. RCW 26.19.001, .080(1). The statutes allow the trial court to deviate from the standard schedule and provide a nonexclusive list of reasons for deviation. RCW 26.19.075. One of those reasons, relied on by Mr. Moore here, is a support obligation to children from another relationship. RCW 26.19.075(1)(e). That basis for deviation is permitted only if the parent is actually paying the support obligation. RCW 26.19.075(1)(e)(iii). The parent seeking the deviation also must show that the support obligation is judicially enforceable. *In re Parentage of O.A.J.*, 190 Wn. App. 826, 835, 363 P.3d 1 (2015). We review the court's deviation ruling for abuse of discretion. RCW 26.19.075(4); *In re Marriage of Rusch*, 124 Wn. App. 226, 236, 98 P.3d 1216 (2004), *overruled in part on other grounds by In re Marriage of McCausland*, 159 Wn.2d 607, 152 P.3d 1013 (2007).

Mr. Moore's first argument is that because the order entered by the trial court contained the dates of birth of another couple whose marriage was dissolved in Pierce

4

County, the trial court somehow "merged" the two cases together. This argument is utterly without merit. The birthdates were corrected as a result of the motion for reconsideration. Nothing in the records of the case suggests that the trial court applied the wrong financial information in setting the support obligation. If such had happened, Mr. Moore easily would have been able to demonstrate the error on the record.

Mr. Moore also argues that the trial court should have granted him a deviation down due to his support obligation for an older child. There are several problems with this argument. He did not present it at trial.[3] His request during reconsideration came too late. More importantly, our record does not support any factual basis for granting the request. Nothing in the evidence presented at trial suggests that Mr. Moore was subject to a formal support obligation or that he was paying that obligation. Nor did the motion for reconsideration mention any evidence in the record that would have supported the deviation. This argument lacks support in the record.

Finally, Mr. Moore claims that the court miscalculated his income and submitted a letter from his employer, written four months after the trial, which states Moore works less than 80 hours per pay period. However, this court does not consider evidence that was not before the trial court. RAP 9.11(a). More importantly, the evidence contradicted Mr. Moore's own trial testimony that he did work 40 hours per week. The trial court

---

[3] While Mr. Moore argues that the request was in his written materials presented to the trial court, he did not designate those documents on appeal and they are not before us.

understandably ruled on the basis of the evidence before it and could not possibly err in failing to anticipate a later occurring change.

The trial court had very tenable bases for rejecting Mr. Moore's arguments. There was neither error nor abuse of discretion in the rulings concerning the support obligation.

*Parenting Plan*

Mr. Moore challenges several aspects of the parenting plan. Many of these challenges are based on his personal view of his relationship with N.R.M. and his personal view of the child's best interests. He again fails to demonstrate error.

Parenting plans are individualized decisions that depend on a wide variety of factors, including "'culture, family history, the emotional stability of the parents and children, finances, and any of the other factors that could bear upon the best interests of the children.'" *In re Parentage of Jannot*, 149 Wn.2d 123, 127, 65 P.3d 664 (2003) (quoting *In re Parentage of Jannot*, 110 Wn. App. 16, 19-20, 37 P.3d 1265 (2002)). The combination of relevant factors and their comparative weight are different in every case and no rule of general applicability can be effectively constructed. *See Jannot*, 110 Wn. App. at 20. The trial court is better suited than an appellate court to weigh these varied factors on a case-by-case basis. *Id.*; *In re Marriage of Maughan*, 113 Wn. App. 301, 305, 53 P.3d 535 (2002). In large measure this results from the trial court's unique opportunity to observe the parties and thereby determine the best interests of the child. *In re Marriage of Timmons*, 94 Wn.2d 594, 600, 617 P.2d 1032 (1980). Accordingly, this

6

court reviews a parenting plan for abuse of discretion. *In re Marriage of Kovacs*, 121 Wn.2d 795, 801, 854 P.2d 629 (1993); *In re Marriage of Jensen-Branch*, 78 Wn. App. 482, 490, 899 P.2d 803 (1995).

The trial court expressly told the parties at the conclusion of argument that because the parents "don't work well with each other," it would be necessary to implement "a straightforward fairly simple parenting plan" that minimized parental contact. Report of Proceedings (RP) at 269. To that end, the court designated Ms. Vallee as the primary residential parent and gave her authority to make daycare decisions, while leaving the parents to jointly make all other major decisions. The court also directed that Mr. Moore would have custody of the child every other week from Thursday at 6:00 p.m. to Sunday at 6:00 p.m. Clerk's Papers (CP) at 80, 84-85.

Mr. Moore contends that the trial court erred in not giving him 50 percent of the child's time, arguing that the schedule should give him N.R.M. every week instead of every other week, just as the temporary parenting plan had done. He contends that the court's order is not in the best interests of the child. He also argues that the court erred in not considering him the primary parent, erred in giving Ms. Moore the daycare decision-making authority, and showed bias against him by applying the "friendly parent" standard in favor of Ms. Vallee. Since there is nothing in the record to suggest that the

court applied the friendly parent doctrine, we do not further discuss that claim.[4] We will address the other contentions in the order stated.

The primary objection is that the final parenting plan did not follow the temporary parenting plan's schedule and, instead, allowed visitation only on alternate weekends. At trial, Mr. Moore asked for a plan that left the child with him on the first, third, and fourth weekends of every month, while leaving N.R.M. with his mother and his brothers[5] on the second weekend and any fifth weekend that might occur. RP at 149-150. In its oral remarks, the court rejected Ms. Vallee's request for co-parenting counseling because the parties could hardly talk to each other. The judge noted that both parents were more interested in being right than in communicating with each other. RP at 268-269. To that end, the court believed a simplified relationship was in order.

Mr. Moore cites to the public policy that a child's best interests ordinarily are served by maintaining the existing patterns of child-parent interaction. RCW 26.09.002.[6] That policy, however, also recognizes that those patterns will be altered "to the extent necessitated by the changed relationship of the parents." *Id.* Even Mr. Moore's trial testimony asked for a different plan than the temporary parenting plan, although he was

---

[4] Washington law does not recognize the "friendly parent" doctrine. *See In re Marriage of Rossmiller*, 112 Wn. App. 304, 311, 48 P.3d 377 (2002); *In re Marriage of Lawrence*, 105 Wn. App. 683, 687, 20 P.3d 972 (2001).

[5] Ms. Vallee has three sons from an earlier relationship.

[6] Of course, the original interaction pattern was disrupted when the couple no longer lived together.

only conceding one weekend a month to Ms. Vallee. The trial court recognized that co-parenting was not possible given the failure of the couple to work together. This was a tenable basis, recognized by statutory policy, for settling on the final parenting plan. It was not in N.R.M.'s best interests to see his parents fight any more frequently than was necessary.[7]

Mr. Moore also argues that the court improperly weighed[8] the strength of his relationship with N.R.M., an error that he believes impacted both the weekend visitation schedule and the designation of Ms. Vallee as the primary residential parent. In his mind, Mr. Moore believes his ties with N.R.M. are stronger than those between the child and Ms. Vallee. The trial court, however, found that both adults were good parents to the child. RP at 268. There was no finding that Mr. Moore had a stronger relationship. If

---

[7] Mr. Moore also fails to explain why the *temporary* parenting plan should have been given any weight in setting the final plan. The whole purpose of a temporary plan—which typically is entered without background information or by the agreement of the parties—is to have some rules in place while the court considers what is in the child's long-term best interests. The fact a temporary plan had been entered did not somehow bind the trial court in the future. RCW 26.09.191(5).

[8] Although one of his argument captions alleges that the court failed to analyze the RCW 26.09.187(3)(a) factors, he does not argue that point in the brief. Instead, he focuses on the facts that support his view that he had the stronger relationship with the child, RCW 26.09.187(3)(a)(i), the most important of the factors. *See* RCW 26.09.187(3)(a). A trial court should make a record of its consideration of these factors. *E.g., In re Parenting & Support of C.T.*, 193 Wn. App. 427, 443, 378 P.3d 183 (2016). The record provided us does not show that consideration, but the failure to argue the point precludes us from determining that it did not happen. Even on reconsideration, Mr. Moore did not claim that the trial judge failed to apply the statute. He simply disagreed with the result of the weighing.

9

Mr. Moore believed he had a stronger relationship, he was free to prove the point. He did not. This court is not in the business of weighing evidence and making its own factual determinations. *E.g, Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 717, 225 P.3d 266 (2009). This argument has no factual support in the record.

The designation of Ms. Vallee as the primary custodial parent was not an abuse of discretion. The child was principally living with her and the other children. Even the parenting plan proposed by Mr. Moore left N.R.M. with Ms. Vallee the greater share of the week. In such circumstances, she was understandably recognized as the primary custodian.

Mr. Moore next complains that Ms. Vallee was given control over the daycare decision making. Again, we see no abuse of discretion in leaving that decision to the primary custodial parent. It was understandably desirable to keep Ms. Vallee's children together and it was appropriate for her to be able to have convenient daycare. The demonstrated lack of ability to get along with each other on this very issue[9] was an obvious reason to not leave Mr. Moore with equal control over this important determination—particularly where that decision would also impact the other children.

---

[9] See the example discussed in the following section.

The inability of the parents to work together was a legitimate basis for the court to consider when finalizing the parenting plan. Minimizing the conflict between the two was in the child's best interests. The trial court did not abuse its discretion.

*Sanction*

Mr. Moore next argues that the court erroneously sanctioned him for intransigence during the settlement negotiations. There was no abuse of the trial court's considerable discretion in this ruling.

The decision to impose sanctions is one within the trial court's discretion. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). Here, the trial court expressly found:

> The court finds that Moore altered settlement documents and intentionally
> failed to disclose that fact to the Petitioner's counsel in an apparent attempt
> to deceive Petitioner to have this court enter documents to resolve this
> matter on terms that were not, in fact, agreed to by Petitioner.

CP at 92. The record amply supports this determination. Ms. Vallee testified to the alterations and the altered documents were introduced at trial for the sole purpose of demonstrating the alterations. Mr. Moore did such things as insert the word "not" into statements in the settlement form. For example, he altered the proposal that "the child shall attend daycare with the mother's other children" into "the child shall not attend daycare with the mother's other children." RP at 68. While there are many other examples, this one is typical. Mr. Moore altered the meaning of key provisions of the

11

settlement document, signed it, and then attempted to deceive Ms. Vallee and her counsel

into believing that he had agreed to their proposal.

Ms. Vallee's attorney indicated that she expended attorney fees totaling $2,040 in

attending the settlement hearing and in seeking sanctions for Mr. Moore's misbehavior in

that forum. CP at 130-131. The trial court awarded $2,000 of that sum. CP at 92.

There was a clear basis for finding Mr. Moore intransigent. He was free to not

agree with the settlement proposals. However, he could not alter those proposals and

then attempt to deceive the other side by claiming to have agreed to the original

proposals. This was a waste of time that demonstrated that his interest in settlement was

a sham. It was appropriate to reimburse Ms. Vallee for the costs imposed on her by Mr.

Moore as a result of this fruitless exercise.

The trial court did not abuse its discretion.

*Reconsideration*

The only remaining contention is the argument that the court erred in stating in its

order denying reconsideration that "the parties *agreed* it was inappropriate for the

Respondent to have residential time *every* weekend as had been the case pending trial."

CP at 119 (alteration in original). Mr. Moore contends that he did not agree that it was

inappropriate.

As with the other issues presented by this appeal, we review a court's order on

reconsideration for abuse of discretion. *City of Longview v. Wallin*, 174 Wn. App. 763,

12

No. 34975-6-III
*Vallee v. Moore*

776, 301 P.3d 45 (2013). While this challenged recitation was of little moment since the court did not err in setting the visitation schedule, it also did not amount to an abuse of discretion. Both parties filed parenting plans that permitted the other to have some weekend time with N.R.M. That fact permitted the trial court to infer that the parties agreed that it was not appropriate for one parent to have every weekend.

The court did not abuse its discretion in denying reconsideration.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Fearing, C.J.

Lawrence-Berrey, J.

13