[No. 14841.　Department One.　January 10, 1919.]

THEODORE O. LOVELAND *et al., as Brenard
Manufacturing Company, Appellants,*
v. REESE COMPANY, *Respondent.*[1]

CONTRACTS (33, 72) — SEVERABLE CONTRACTS — REQUISITES — CON-
STRUCTION—FAILURE OF CONSIDERATION. A contract by a manufac-
turer to furnish articles for prizes and the services of a skilled
organizer for a trade extension campaign, and the merchant's promis-
sory notes given in consideration thereof, constitute one indivisible
contract, and there can be no recovery on the notes in case of fail-
ure to furnish the articles or services constituting the considera-
tion.

Appeal from a judgment of the superior court for
Yakima county, Holden, J., entered December 24, 1917,
upon findings in favor of the defendant, in an action
on promissory notes, tried to the court. Affirmed.

*V. O. Nichoson,* for appellants.
*O. L. Boose,* for respondent.

MITCHELL, J.—In March, 1915, the Reese Company,
a corporation, of Sunnyside, Washington, executed
and delivered its six promissory notes aggregating
$340, payable to Brenard Manufacturing Company, a
partnership, of Iowa City, Iowa. None of the notes
being paid at maturity, this action was brought on all
of them. The Reese Company defended on alleged
failure of consideration, claiming the notes were given
in consideration of a trade extension campaign con-
tract made to it by Brenard Manufacturing Company
which remained unperformed at the time of the com-
mencement of the suit. The trial court made findings
and entered judgment that there had been failure of
consideration, ordered the notes cancelled and dis-

[1]Reported in 177 Pac. 719.

missed the action. Brenard Manufacturing Company appealed.

Respondent, a merchant, desiring to improve and extend its business, entered into the trade extension campaign contract, the purpose of which was to encourage contests among its present and prospective patrons and customers for certain designated prizes. The prizes were to consist of numerous articles, including a piano, gentleman's and lady's gold filled watches, and thence down through a long list of "Queen Esther" silverware of seventeen different patterns, from tablespoons by the dozen to a single gravy ladle. The piano was to be furnished by respondent. All the other prizes were to be furnished by appellant f. o. b. factory or other distributing point. Appellant was to furnish one book entitled "The Brenard Mfg. Co's. Trade Booster Methods," twenty posters 28x36, five hundred $5 trading books, one set of "Display Card" signs, one electro-plate of piano, instructions for newspaper advertising, which, if done, was to be without expense to appellant, thirty-six certificates for piano votes in denominations of 5 to 100,000 votes, and six due bills ranging from $275 to $300, each good for one Claxton Piano when accompanied with the difference in cash as designated by the due bill. Appellant was to furnish an enrollment register, or tally book, in which to enter the scores of the contestants for prizes and from which, at stated intervals, correct reports were to be made to appellant during the six months the contest should run. To add zest to the campaign, the prizes were to be placed on exhibition, and to still further enliven things, appellant was to send on an organizer to explain the benefits of the enterprise to each of more than 100 prospective customers whose names were furnished by respondent and with whom appellant was supposed to have already had some intro-

ductory correspondence to prepare and make easy the way of the organizer. It was understood by respondent and appellant's soliciting agent, when the contract was discussed earlier in the year, that the campaign should commence about the first of April. From about March 23, 1915, and thence along from time to time for about a month, appellant forwarded portions of the supplies and prizes, some by express, others by insured parcel post and registered mail. By the contract, appellant agreed to send its organizer to Sunnyside within six weeks from the starting of the campaign for constructive campaign work and the completion of the contesting clubs. Without notice to respondent of the precise date he would arrive, the organizer called on respondent on April 23, 1915, to commence work, but upon learning that the score register, or enrollment book, which it appears was most indispensable, and some of the most important prizes had not yet been received by respondent, the organizer declined to commence the campaign.

From time to time, respondent promptly advised appellant of the nonarrival of portions of goods and supplies supposed to have been shipped, causing appellant to send tracers, as the testimony shows, for such goods claimed to have been forwarded. Considerable correspondence took place between the parties during the summer and fall months, each blaming the other for the failure of the campaign. In the meantime, the enrollment register was received, of which appellant was notified, which, with all other goods received, were kept intact without being displayed by respondent. Appellant threatened suit on the notes then due, though offering to perform the contract at some future time. Respondent denied any matured liability. In the meantime, on November 15, 1915, without notice to respondent, appellant sent another organizer to Sun-

nyside, when, upon consideration of the fact that the watches (which were important and necessary in the plan of advertising) had not yet been received, together with the fact that winter was approaching, it being considered an unfavorable season for such a campaign, this organizer refused to commence the campaign.

Without any further attempt at adjustment or performance of the contract, the appellant sued in June, 1916, at which time, indeed at the trial of the case, the watches, among the most important prizes, had not been received. In addition to the defense of failure of consideration, respondent plead and kept good a former tender of those goods and supplies it had received, which were awarded to appellant by the judgment.

The defense in the case was well established by the proof, for the contract of appellant to furnish all the goods, a substantial and important part of which was never supplied, together with the skilled services of an organizer, constituted an indivisible, nonseverable contract and consideration for the notes sued on, the nonperformance of which called for a cancellation of the notes.

Judgment affirmed.

MAIN, C. J., MACKINTOSH, TOLMAN, and CHADWICK, JJ., concur.