[No. 34268. Department Two. February 13, 1958.]

JACK SALETIC *et al., Appellants,* v. IRVING STAMNES *et al., Respondents.*[1]

*Anthony M. Ursich* and *Richard J. Jensen,* for appellants.

*Landon & Aiken,* for respondents.

FOSTER, J.—Appellants, who were plaintiffs below, appeal from a final judgment, after trial, dismissing their complaint for an accounting of a joint venture. The evidence is not brought here, so the question is: Do the findings support the judgment?

[1]Reported in 321 P. (2d) 547.

■ This depends upon whether or not the bilateral contract,[2] which is set out in the findings as follows, was entire or severable:

". . . It is hereby mutually agreed by all parties hereto concerned that the Purse Seine Boats EMBLEM, HOLY CROSS, SEA FOAM and INVINCIBLE are to pool all fish caught by them during the entire fishing season in the Alaskan Peninsula and Port Moller Areas, each boat to share and share alike the gross proceeds derived therefrom. . . ."

The court found that the parties did fish their boats in accordance with the contract from the time of its execution on June 14, 1952, until June 28, 1952, when the appellants abandoned the enterprise and returned their vessels to the United States "in breach of their contract and without justification." It was admitted at our bar that the respondents continued to fish for the remainder of the season.

The court made a conclusion of law that the contract was entire and not severable. We cannot find otherwise without the evidence. Appellants' counsel, with commendable fairness, conceded in argument that if the contract is entire the judgment should be affirmed. The respondents argue there were inequalities in the capacities of the boats which could be equalized only by fishing the entire season. For aught we know, respondents' boats may have had the advantage during the first portion of the fishing season when both parties fished all of their boats, and the reverse may have been true during the balance of the season when only respondents' boats fished. While respondents so contend and appellants do not deny, we cannot test the ac-

---

[2] "A 'bilateral contract' is one in which there are reciprocal promises, and promise by one party is the consideration for the promise by the other and each party is bound by his promise to the other. *Cook v. Johnson, 221 P. 2d 525, 527, 37 Wash. 2d 19.*" 1 Wash. Words and Phrases 238.

"The distinction between a unilateral contract and a bilateral contract is that, in the former, the offer or promise of the one party does not become binding or enforcible until there is performance by the other party, whereas, in the latter, it is not performance which makes the contract binding, but rather the giving of a promise by the one party for the promise of the other." *Higgins v. Egbert, 28 Wn. (2d) 313, 317, 182 P. (2d) 58.*

curacy of the statements in the absence of the evidence. Certain it is, however, we cannot say that at the time of the execution of the contract the parties had any circumstances in mind which would make it severable.

Appellants' counsel admitted in argument that the appellants breached their contract, as found by the trial court, by abandoning the joint venture two weeks after the contract was executed. No excuse was offered therefor, and the court found that there was none.

Nevertheless, the appellants insist upon the equitable remedy of an accounting—not for the entire fishing season, but for the two weeks preceding appellants' breach of the contract.

Appellants did not offer to do equity in their complaint. It seems strange, indeed, that suitors, admitting their breach of a joint venture contract, should seek the aid of a court of equity to enforce rights claimed by them under the identical contract. No one may profit by his own wrong. It seems to us that by their own admitted misconduct appellants forfeited any rights to an accounting. We think the controlling rule of law under such circumstances was well stated in *Miller v. Hale*, 96 Mo. App. 427, 70 S.W. 258:

"But a partner, especially one for a special purpose, may abandon the contract and thereby foreit his right to an equal share of the proceeds of the business. *Henry v. Bassett*, 75 Mo. 89; *Denver v. Roane*, 99 U. S. 355; *Marsh's Appeal*, 69 Pa. St. 30; *Zell's Appeal*, 126 Pa. St. 329."

While we might rest our decision upon that ground alone, because of the earnestness with which the appellants' counsel presents his views that the contract was severable and the trial court found it to be entire and inseverable, we pass to a consideration of that subject.

We think the contract entire, and the agreement by its terms was to pool "all fish caught by them during the entire fishing season." There was certainly no contract to pool the fish caught for a fraction of the season. The parties might not have been willing to make such an arrangement because of the asserted inequalities in the capacities of the

boats, but certain it is that we cannot now make such an agreement for them.

██ The rule for determining whether a contract is entire or severable was stated in *Traiman v. Rappaport*, 41 F. (2d) 336, 71 A. L. R. 475, 479, as follows:

"Whether a contract is entire or divisible depends very largely on its terms and on the intention of the parties disclosed by its terms. As a general rule a contract is entire when by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration."[3]

It is, likewise, stated in 1 Restatement, Contracts, 382, § 266 (2), as follows:

"In all bilateral contracts where the only consideration on each side consists of promises, all the promises on one side taken collectively and all the promises on the other side taken collectively are promises for an agreed exchange except . . . [not here material]"

The supreme court of the United States summarized the proposition in *United States v. Bethlehem Steel Corp.*, 315 U. S. 289, 298, 86 L. Ed. 855, 62 S. Ct. 581, in the following sentence:

"Whether a number of promises constitute one contract or more than one is to be determined by inquiring 'whether the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out.'"

██ To state the problem is to simultaneously answer it. Respondents agreed to pool all fish caught during the entire fishing season if appellants did likewise. The whole of the respondents' promise went to the whole of appellants'

---

[3]The same view was expressed in *Paramount Famous Lasky Corp. v. Nat. Theatre Corp.*, (C.C.A. 4th), 49 F. (2d) 64. It has been recognized in this state in *Carmack v. Drum*, 27 Wash. 382, 387, 67 Pac. 808. See, also, *Sunset Shingle Co. v. Northwest Electric & Water Works*, 118 Wash. 416, 203 Pac. 978; *Loveland v. Reese Co.*, 105 Wash. 204, 207, 177 Pac. 719; *Brechlin v. Night Hawk Mining Co.*, 49 Wash. 198, 94 Pac. 928; *Chilberg v. Jones*, 3 Wash. 530, 28 Pac. 1104. The English cases are collected in 8 Halsbury's Laws of England (3d ed.) 198, § 336. For text discussion see 4 Page, Law of Contracts 3606, chapter LXV; 3 Williston on Contracts 2300, § 818; 12 Am. Jur. 870, 871, 872, §§ 315, 316, 317.

promise. Such promises were bilateral and mutual in every respect, and incapable of division. Appellants abandoned the enterprise and did not complete their part of the bargain.

Appellants are manifestly not entitled to an accounting in equity.

The judgment is affirmed.

HILL, C. J., ROSELLINI, DONWORTH, and HUNTER, JJ., concur.