[No. 31892-0-II.   Division Two.   August 30, 2005.]

*In the Matter of the Marriage of* ANGELA KARON
McCAUSLAND, *Respondent,* and ROBERT GLENN
McCAUSLAND, *Appellant.*

*Catherine W. Smith* and *Valerie A. Villacin* (of *Edwards, Sieh, Smith & Goodfriend, P.S.*) and *Jeffrey A. Robinson*, for appellant.

*Edward M. Lane* and *Barbara A. Henderson* (of *Smith Alling Lane*), for respondent.

¶1 VAN DEREN, A.C.J. — This is the second appeal arising from the interpretation and enforcement of a March 2000 spousal agreement (2000 Agreement) between Robert and Angela McCausland. The parties' final separation occurred in 1998, and their marriage was dissolved in October 2001. In the first appeal, we determined that the 2000 Agreement provisions for a $16 million cash payment and a $5,500 monthly payment from Robert to Angela[1] were unenforceable. We reversed and remanded to the trial court to "reconsider and to segregate monthly child support, spousal maintenance, and any property distribution adjustments flowing therefrom." *In re Marriage of McCausland*, noted at 112 Wn. App. 1029, 2002 WL 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *16 (unpublished). We also directed the trial court to set child support according to the requirements of chapter 26.19 RCW, including specifying any deviations and their justification. Finally, we directed the trial court to reconsider its award of attorney fees to Angela at trial.

¶2 Robert appeals the trial court's decision on remand. He argues that the trial court erroneously (1) calculated child support, (2) awarded monthly payments to Angela as a property division until her death, and (3) enforced other support provisions of the 2000 Agreement without regard for need or ability to pay. Robert also ascribes error to the trial court's finding of fact that Angela had a need for attorney fees and that he had an ability to pay, but he agrees with its conclusion that Angela should not be awarded such fees.

¶3 Angela cross-appeals, arguing that the trial court improperly (1) allocated tax refunds from tax years 1997

---

[1] We refer to the parties by first name for clarity and mean no disrespect.

and 1998, (2) allocated tax deductions 20 years hence to Robert, and (3) erred in declining to award her attorney fees.

¶4 We reverse and vacate the property division. We remand to a different judge for determination of child support and maintenance, if any, and to determine whether equity requires a recharacterization nunc pro tunc of any portion of the undifferentiated support Robert paid to Angela. We also vacate the order requiring Robert to pay Angela's house maintenance and repair expenses and remand for determination of any reimbursement Angela owes to Robert for expenses he has paid since our earlier remand.

## FACTS

¶5 Robert and Angela married on May 26, 1988. They have two children. They divorced in October 2001.[2] We need not repeat the background facts we set forth in our previous opinion. *McCausland*, 2002 WL 1399120, at *1, 2002 Wash. App. LEXIS 1499, at 396 *1-4. Rather, we highlight only the facts pertinent to the issues in this appeal from the trial court's actions on remand.

### I. PRIOR APPEAL

¶6 In his prior appeal, Robert argued that the trial court improperly characterized his monthly $5,500 support payment to Angela as a "property division." *McCausland*, 2002 WL 1399120, at * 3, 2002 Wash. App. LEXIS 1499, at *9. We agreed, holding that the provisions in the 2000 Agreement

---

[2] The record does not contain the October 2001 findings of fact, conclusions of law, decree of dissolution, or parenting plan. Although there was a temporary order of support or family maintenance, "the trial court did not independently establish a separate child support amount. Instead, it apparently lumped child support together with spousal maintenance, characterized the combined $5,500 monthly payments as property division, and said that these payments would be 'as support for wife and children.'" *In re Marriage of McCausland*, noted at 112 Wn. App. 1029, 2002 WL 1399120, at *4, 2002 Wash. App. LEXIS 1499, at *2. No child support order or worksheets were filed at the time of dissolution.

for $5,500 "combined monthly support" payments and a $16 million cash payment to Angela for the anticipated, but nonrealized, IPO[3] stock sale were "unenforceable." *McCausland*, 2002 WL 1399120, at *2, 3, 2002 Wash. App. LEXIS 1499, at *8-9. We remanded to the trial court:

> [T]o reconsider and to segregate the combined monthly child support and maintenance payments; to set child support according to the requirements of RCW 26.19, including specifying any appropriate deviations and the justification therefore; and to adjust the property distribution as necessitated by the reconsideration of the combined monthly payments.

*McCausland*, 2002 WL 1399120, at *1, 2002 Wash. App. LEXIS 1499, at *1-2.

¶7 We also determined that under the terms of the 2000 Agreement, only a party who successfully enforced the Agreement was entitled to attorney fees, and we directed the trial court to reconsider whether it should have awarded attorney fees to Angela under RCW 26.09.140 "based on the relative financial resources of the parties" since neither party had successfully enforced the 2000 Agreement at trial. *McCausland*, 2002 WL 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *14. We further required that, "[i]f on remand the trial court persists in awarding attorney fees to Angela," it must "state on the record the method it used to calculate such award." *McCausland*, 2002 WL 1399120, at *5 n.7, 2002 Wash. App. LEXIS 1499, at *15 n.7, *13.

## II. Remand

¶8 At the 2003 remand hearing, Robert urged the trial court (1) to set child support based on his 2001 income of $75,000, (2) to impute $40,000 income to Angela based on her training and experience as a teacher, (3) to grant him a residential credit for the time the children spent with him in order to reduce his child support transfer payment to

---

[3] "IPO" is a common acronym for Initial Public Offering. *Black's Law Dictionary*, 8th ed., at 1114, defines an IPO as "A company's first public sale of stock."

Angela accordingly, and (4) to terminate his spousal maintenance obligation to Angela.

¶9 Angela urged the trial court (1) to reinstate its original $5,500 per month "support" payment, (2) to divide the $5,500 payment between child support and spousal maintenance, and (3) to extrapolate the proper amount of child support based on Robert's historical income. In addition, Angela raised three new issues. She asked the trial court (1) to award her a portion of the tax refund from the parties' 1997 and 1998 tax returns, (2) to order Robert to reimburse her $6,000 for "major maintenance" to the family home, and (3) to require Robert to reimburse her for 100 percent of the children's orthodontia expenses. Clerk's Papers (CP) at 189. Finally, Angela sought attorney fees.

A. Property Provisions

¶10 The trial court recited its findings of fact and conclusions of law entered on October 20, 2001, that the parties' anticipated $16 million property division to Angela from the bankrupt corporation was unenforceable. It also found that Robert's maintenance obligation to Angela terminated when the parties executed the 2000 Agreement. It further determined that the remainder of the 2000 Agreement was severable from the $16 million payment provision and was therefore enforceable, despite our holding that the $5,500 monthly combined support was independently unenforceable. *McCausland*, 2002 WL 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *14-15.

¶11 Based on its determination of severability of the 2000 Agreement's provisions, the trial court awarded the difference between the amount of monthly child support it ordered and $5,500 to Angela as a new "property" division.[4] CP at 493. The trial court further ordered that (1) the

---

[4] The trial court did not explain how this related to or affected the prior distribution of property that divided all of their community and separate property. In that distribution, Angela received property with a net value of $500,000 to $700,000, and Robert received a net property division of close to $0. Nor did the trial court place a present value on a lifetime of nontaxable property payments to a 43-year-old woman. Angela was born in July 1961.

"property" payment did not terminate on Robert's death so that the payment of $5,500 a month would be a claim on his estate; (2) the payment of $5,500 a month was for the rest of Angela's life, regardless of a reduction in child support or Angela's remarriage; (3) the payment was not dischargeable in bankruptcy; and (4) the payment was not taxable to Angela or deductible by Robert.

## B. Child Support Calculation

¶12 In calculating child support, the trial court (1) imputed $2,000 a month income to Angela based on her unreported rental income and her voluntary unemployment, (2) determined that Robert's monthly net income was $12,523, and (3) awarded Angela extrapolated child support of $2,842 a month for the two children. The trial court explained that it set the award in excess of the statutory amount because:

> The father's income alone is greater than $7,000 per month. The children participate in dance and sports activities, which are significant expenses. The children have the expectation of support at the level of their father's significant historical income.

CP at 506. The trial court did not award Robert a residential credit to offset his child support payments.[5]

## C. Tax Refunds, Loss Carry Forwards, Home Maintenance, and Medical/Dental Expenses

¶13 With regard to the new issues Angela raised on remand, the trial court: (1) awarded Robert the tax refunds from the parties' 1997 and 1998 returns and the loss carry forward from the 1999 tax return; (2) ordered Robert to reimburse Angela for repairs and maintenance to the family home, finding that under the terms of the 2000 Agreement, he was responsible for such costs for the rest of Angela's life; and (3) ordered Robert to pay 100 percent of

---

[5] The parenting plan is not part of the record on appeal and we do not review whether Robert was entitled to an adjustment for residential time with the children. The trial court may consider this on remand.

the children's orthodontia expenses and all other extraordinary medical and dental expenses for the children.

## D. Attorney Fees

¶14 The trial court determined that Robert had the ability to pay Angela's attorney fees and that Angela had a need for him to pay them but that our prior opinion precluded the trial court from awarding fees to Angela.

## ANALYSIS

### I. Superior Court Authority on Remand

¶15 Robert argues that our previous decision limited the superior court's scope of authority on remand. Agreeing with Robert in principle, Angela argues that, nonetheless, we left the superior court some discretion on remand.

¶16 It is a well settled principle that our mandate is "binding" on the superior court and "must be strictly followed." *Harp v. Am. Sur. Co. of N.Y.*, 50 Wn.2d 365, 368, 311 P.2d 988 (1957); *State ex rel. Smith v. Superior Court*, 71 Wash. 354, 357, 128 P. 648 (1912). The Supreme Court, however, has distinguished between what the superior court on remand is *"obligated* to do without the exercise of any discretion and the area within which it *could* exercise its discretion." *Harp*, 50 Wn.2d at 369 (emphasis added); *see also State ex rel. City of Seattle v. Superior Court*, 1 Wn.2d 630, 633, 96 P.2d 596 (1939). The superior court may exercise discretion where an appellate court directs it to "consider" an issue, although in so doing, it must adhere to the appellate court's instructions, if any. *Smith*, 71 Wash. at 357.

¶17 Here, we determined that the $16 million cash payment from Robert to Angela in the 2000 Agreement and the $5,500 monthly payments to Angela were unenforceable. *McCausland*, 2002 WL 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *14-15. We remanded to the superior court with instructions to "reconsider" (1) child support and

maintenance according to the requirements of chapter 26.19 RCW; (2) the parties' property distribution to the extent "necessitated by the reconsideration of the combined monthly payments"; and (3) attorney fees, including "establish[ing] a factual basis for any fee award." *McCausland*, 2002 WL 1399120, at *1, 2002 Wash. App. LEXIS 1499, at *2.

¶18 As the Supreme Court contemplated in *Harp*, we note that our use of the term "reconsider" in our previous opinion was intended to indicate that the superior court would wield some discretionary power in the act of "reconsidering" but that it must also formulate its decision within the limitations of our specific instructions on remand. *Harp*, 50 Wn.2d at 369. In other words, the remand did not open all other possible dissolution-related issues nor could the trial court ignore our specific holdings and directions on remand.

¶19 Angela argued on remand that the trial court should segregate the $5,500 monthly payments into maintenance and child support. Robert argued that the trial court should award child support, but no maintenance. The trial court determined that Robert's maintenance obligation terminated upon execution of the 2000 Agreement. It then (1) classified part of the $5,500 monthly payment as child support and part as "property"; (2) ordered that if child support were modified or terminated, that the "property" portion of the award would increase commensurately; and (3) ordered that the new "property" payment continue for the rest of Angela's life. CP at 494.

¶20 But we previously held that the $5,500 monthly payment was unenforceable. *McCausland*, 2002 WL 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *14-15. Therefore, it was not severable from the rest of the 2000 Agreement and it did not survive as a contract obligation following the failure of the internet company IPO in 2000. Any fair reading of the 2000 Agreement shows that the temporary undifferentiated support payments from Robert to Angela were inextricably tied to the success of the

proposed internet company. All of the economic concessions Robert made in the 2000 Agreement clearly anticipated that he would be a multimillionaire, able to afford all the expenses for his family, including paying off Angela's house, carrying its expenses, and paying for all the children's medical, dental, and orthodontia expenses.

¶21 Under these circumstances, the trial court could not properly designate a portion of the $5,500 monthly payments as a new property distribution on remand. This is true, especially in light of the prior distribution of all of the parties' assets and liabilities in the 2001 Decree.

¶22 We directed the trial court to segregate any monthly payments into child support and maintenance.[6] Nothing in the parties' 2000 Agreement or in our remand order contemplated that the trial court would allocate a portion of the unenforceable $5,500 monthly payment as property distribution; nor did the parties ask the trial court to so allocate it. *McCausland*, 2002 WL 1399120, at *1, 2002 Wash. App. LEXIS 1499, at *1-2. Therefore, we vacate that portion of the $5,500 monthly payment the trial court improperly characterized as a property distribution.

## II. PROVISIONS IN THE 2000 AGREEMENT

¶23 On remand, the trial court ruled that the $16 million payment that we held was unenforceable was severable from the remainder of the 2000 Agreement. Then it ruled that, in addition to the $5,500 monthly payment, the portions covering home repair and the children's medical, dental, and orthodontia expenses remained intact as contract obligations. We address whether these portions of the 2000 Agreement were severable and whether these provisions need to be addressed on further remand.

---

[6] Our intent in specifying a reconsideration of the property distribution adjustments was to remind the trial court to consider the other payments Robert was making, i.e., the mortgage on the family home, costs of repairs and maintenance on the house, taxes and insurance, all of which are taken into consideration when considering the need for maintenance and the allocation of extraordinary expenses for the children.

## A. Standard of Review

■ ¶24 Generally we give words in a written agreement their "ordinary, usual, and popular meaning unless the entirety of the agreement clearly demonstrates a contrary intent." *Hearst Commc'ns., Inc. v. Seattle Times Co.*, 154 Wn.2d 493, 115 P.3d 262 (2005). To determine the parties' intent in a written agreement, we employ the context rule, as articulated in *Berg v. Hudesman*, 115 Wn.2d 657, 667, 801 P.2d 222 (1990); *see also Adler v. Fred Lind Manor*, 153 Wn.2d 331, 351, 103 P.3d 773 (2004).

¶25 Under the context rule, extrinsic evidence is admissible to aid in ascertaining the parties' intent "where the evidence gives meaning to words used in the contract." *Hollis v. Garwall, Inc.*, 137 Wn.2d 683, 695, 974 P.2d 836 (1999) (citing *Nationwide Mut. Fire Ins. Co. v. Watson*, 120 Wn.2d 178, 189, 840 P.2d 851 (1992) ("[e]xtrinsic evidence illuminates what was written, not what was intended to be written")).

¶26 Thus, we determine the parties' intent by:

> viewing the contract as a whole, which includes the subject matter and intent of the contract, examination of the circumstances surrounding its formation, subsequent acts and conduct of the parties, the reasonableness of the respective interpretations advanced by the parties, and statements made by the parties during preliminary negotiations, trade usage, and/or course of dealing.

*Adler*, 153 Wn.2d at 351.

¶27 Extrinsic evidence may be used whether or not the contract language is ambiguous. *Hudesman*, 115 Wn.2d at 669. However, extrinsic evidence may not be used "(1) to establish a party's unilateral or subjective intent as to the meaning of a contract word or term; (2) to show an intention independent of the instrument; or (3) to vary, contradict, or modify the written word." *W. Wash. Corp. of Seventh-Day Adventists v. Ferrellgas, Inc.*, 102 Wn. App. 488, 495, 7 P.3d 861 (2000) (citing *Hollis*, 137 Wn.2d at 695-96).

█ ¶28 A contract may be either severable or entire, depending upon the parties' intent. *State v. Plaggemeier*, 93 Wn. App. 472, 482, 969 P.2d 519 (1999). When determining the parties' intent, we "do not concern ourselves with unexpressed subjective intent, only objective manifestations of intent." *State v. Turley*, 149 Wn.2d 395, 400, 69 P.3d 338 (2003).

¶29 Generally, a contract is "entire," rather than severable, when " 'by its terms, nature and purpose, it contemplates and intends that each and all of its parts are interdependent and common to one another and to the consideration.' " *Saletic v. Stamnes*, 51 Wn.2d 696, 699, 321 P.2d 547 (1958) (quoting *Traiman v. Rappaport*, 41 F.2d 336, 338 (1930)). In other words, a contract is "entire," rather than severable, when " ' "the parties assented to all the promises as a single whole, so that there would have been no bargain whatever, if any promise or set of promises were struck out." ' " *Saletic*, 51 Wn.2d at 699 (quoting *United States v. Bethlehem Steel Corp.*, 315 U.S. 289, 298, 62 S. Ct. 581, 86 L. Ed. 855 (1942)).

B.  Home Maintenance and Repair Expenses

¶30 Robert argues that on remand the trial court erred (1) in selectively enforcing portions of paragraph 21 of the 2000 Agreement that recited the contemplated $16 million payment to Angela and the temporary support provisions and (2) in ordering him to pay for all "major repairs and reasonable maintenance" on Angela's residence for as long as she continues to own it. Br. of Appellant at 21. He further argues that when we previously held that the $5,500 monthly "support" payments and the $16 million transfer payment were unenforceable, we thereby invalidated the entire support section of the 2000 Agreement. Br. of Appellant at 21. Angela argues that we previously held that only the $16 million was "factually unpayable" and that the other provisions of the 2000 Agreement remain valid and enforceable. Br. of Resp't at 18. We agree with Robert. We expressly ruled that both the $16 million payment and the

$5,500 payments were unenforceable. *McCausland*, 2002 1399120, at *5, 2002 Wash. App. LEXIS 1499, at *14-15.

¶31 The linchpin of the financial arrangements between Robert and Angela in the 2000 Agreement was his anticipated receipt of internet company profits from the IPO. *See* CP at 70. Robert's obligation to pay Angela $16 million from the internet profits, to pay temporary support at the rate of $5,500 monthly, and to pay for home maintenance and repairs are contained in the same paragraph of the 2000 Agreement.

¶32 We held that the 2000 Agreement provision requiring Robert to pay Angela $16 million was unenforceable because his company filed for bankruptcy and neither Robert nor his company ever realized the contemplated profits. Those lost profits were never an asset before the court for distribution, nor were they available for the trial court's consideration in setting support obligations. When the IPO earnings failed to materialize, all portions of the 2000 Agreement tied to those profits became unenforceable and the parties' anticipated economic circumstances changed in a manner that the trial court was bound to consider. Accordingly, we now expressly hold that the provisions regarding Robert's obligation to pay for Angela's home maintenance and repairs are also unenforceable.

### III. Child Support Obligation

¶33 Robert also argues that the trial court erred in awarding child support in excess of the maximum statutorily recommended amount and in failing to make sufficient findings to support such an award. Angela counters that the trial court's findings are sufficient to support its child support award. Angela urges that our ruling in *In re Marriage of Clarke*, 112 Wn. App. 370, 48 P.3d 1032 (2002), should control.

¶34 Robert distinguishes the facts here from *Clarke*, where the parent paying support was obligated to pay only

33 percent of his income.[7] He contends that (1) Angela's interpretation of *Clarke* is overbroad; (2) the record here does not provide the same amount of support for a higher award as did the record in *Clarke* because Angela has failed to provide receipts for the extraordinary costs she claims; and (3) if he is required to pay Angela $5,500 per month, we should view his entire $5,500 monthly payment as child support,[8] such that 44 percent of his income is tied to child support.

A. Legislative Scheme

¶35 The legislature created the child support schedule "to ensure that every child support award satisfies the child's basic needs and provides additional financial support commensurate with the parents' income, resources, and standard of living" in a manner that will "equitably apportion the child support obligation between both parents." *Clarke*, 112 Wn. App. at 377-78.

¶36 In setting child support, a trial court first determines the "couple's combined net incomes." *In re Paternity of Hewitt*, 98 Wn. App. 85, 88, 988 P.2d 496 (1999). It uses that figure to calculate the "basic child support obligation, according to the child support economic table set forth in RCW 26.19.020." *Hewitt*, 98 Wn. App. at 88. The trial court then allocates the basic support obligation between the parents "based on each parent's share of the combined monthly net income." RCW 26.19.080(1). This is the "[s]tandard calculation." RCW 26.19.011(8).

¶37 RCW 26.19.065 provides standards for the upper limits of child support ordered by the court:

---

[7] The party challenging the child support award in *Clarke* was obliged to spend only 30 percent of his income on child support. *Clarke*, 112 Wn. App. at 379. We held in *Clarke* that where the parties' combined income is over $7,000, the trial court may award a child support obligation in excess of statutory guidelines, so long as it does not amount to more than 45 percent of a parent's income. 112 Wn. App. at 379.

[8] Robert acknowledges that trial court labeled only $2,842 of the $5,500 monthly payment as child support. Because we have already held that the $5,500 monthly payment is unenforceable, we do not address this issue.

(1) **Limit at forty-five percent of a parent's net income.** Neither parent's total child support obligation may exceed forty-five percent of net income except for good cause shown. Good cause includes but is not limited to possession of substantial wealth, children with day care expenses, special medical need, educational need, psychological need, and larger families.

. . . .

(3) **Income above five thousand and seven thousand dollars.** The economic table is presumptive for combined monthly net incomes up to and including five thousand dollars. When combined monthly net income exceeds five thousand dollars, support shall not be set at an amount lower than the presumptive amount of support set for combined monthly net incomes of five thousand dollars unless the court finds a reason to deviate below that amount. The economic table is advisory but not presumptive for combined monthly net incomes that exceed five thousand dollars. When combined monthly net income exceeds seven thousand dollars, the court may set support at an advisory amount of support set for combined monthly net incomes between five thousand and seven thousand dollars or the court may exceed the advisory amount of support set for combined monthly net incomes of seven thousand dollars upon written findings of fact.

¶38 At issue here is whether the child support order, the worksheets, and the trial court's written findings of fact supporting the extrapolated child support are sufficient under RCW 26.19.065(3), to allow us to meaningfully review the child support obligations of the parents.

## B. Standard of Review

¶39 We review the trial court's child support order for abuse of discretion. *In re Marriage of Fiorito*, 112 Wn. App. 657, 663-64, 50 P.3d 298 (2002). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds, including an erroneous view of the law. *Fiorito*, 112 Wn. App. at 663-64.

¶40 The trial court's entry of general, rather than specific, findings does not automatically require vacation of the

trial court's order if evidence in the record supports it. *In re Marriage of Griffin*, 114 Wn.2d 772, 777, 791 P.2d 519 (1990) (where the record supported the court's general finding, there was sufficient support for its award of child support in excess of the advisory amount); *see also In re Marriage of Crosetto*, 82 Wn. App. 545, 560, 918 P.2d 954 (1996) ("[T]he lack of a trial court's specific findings is not fatal, and in the absence of a finding on a particular issue, an appellate court may look to the oral opinion to determine the trial court's basis for the deviation.").

## C. Extrapolation

¶41 Robert urges us to adopt the standards articulated in *In re Marriage of Daubert*, 124 Wn. App 483, 495, 496, 99 P.3d 401 (2004), in which Division One of this court recently disagreed with our holding in *Clarke*. *Daubert* held that child support awards exceeding the statutory advisory amount are not deviations from the scheduled amounts because support based on combined incomes in excess of $7,000 a month are not on the schedule, but support calculated above the statutory advisory amount must be supported by more than cursory findings. 124 Wn. App at 495, 496.

¶42 Division One held that (1) the trial court's findings must specifically explain "why the amount of support ordered is both necessary and reasonable," *Daubert*, 124 Wn. App. at 495; (2) the trial court's determination of necessity for extrapolated child support should include factors such as "the special medical, educational and financial needs of the children," *Daubert*, 124 Wn. App. at 496 (citing *In re Marriage of Rusch*, 124 Wn. App. 226, 98 P.3d 1216 (2004)); (3) the factors relevant to the trial court's determination of the reasonableness of child support include, but are not limited to, the "parents' income, resources and standard of living," *Daubert*, 124 Wn. App. at 496; and (4) "The mere ability of either or both parents to pay more, whether based on consideration of income, resources or standard of living, is not enough to justify ordering more support." *Daubert*, 124 Wn. App. at 498 (citing an earlier Division One opinion,

*In re Marriage of Scanlon*, 109 Wn. App. 167, 179-80, 34 P.3d 877 (2001) ("[I]t contravenes legislative intent to increase the child support obligation of an obligor parent of moderate means simply because the obligee parent is affluent.")).

¶43 We have previously held that where the parents' combined monthly income exceeds $7,000, the trial court has express statutory authority to extrapolate a child support award amount higher than that advised in the support schedule under RCW 26.19.020. *Clarke*, 112 Wn. App at 379 (holding that where the combined income of the parents was over $8,500, and the father's total obligation constituted only 30 percent of his income, the trial court did not abuse its discretion in awarding more than the statutory advisory amount).

¶44 Here, the trial court found that Robert's net monthly income was $12,523.[9] The court imputed an income of $2,000 per month to Angela. Thus, the parents' combined monthly net income was $14,523. Using the extrapolation method,[10] the trial court ordered combined child support in the amount of $3,296.75 per month, $1,814.22 for the 13-year-old daughter and $1,482.53 for the 9-year-old son. Based on the parties' proportionate share of support,[11] the trial court ordered Robert to pay $2,842 child support per month—$1,278 for the 9-year-old and $1,564 for the 13-year-old.[12]

---

[9] The trial court did not deduct federal income tax because of Robert's "claimed losses on the parties 1999 federal income tax return offsetting his income liability for the years 1997 and 1998 and 20 years in the future in accordance with Federal Income Tax Code § 172." CP at 493.

[10] Under this method, the trial court recited its consideration of Robert's historical income.

[11] The parties' proportionate shares were set at .862 for Robert and .138 for Angela.

[12] The statutory advisory amount of child support for parents with a combined income of $7,000 or more with two children is $767 for children under 12 and $946 for children over 12. RCW 26.19.020. Under these guidelines, the total monthly child support award here would have been $1,713. Robert's share would have been about $1,477.

¶45 The trial court made the following written finding to support its extrapolated award:

> The father's income alone is greater than $7,000.00 per month. The children participate in dance and sports activities, which are significant expenses.[13] The children have the expectation of support at the level of their father's significant historical income.

CP at 506.

¶46 In addition to the extrapolated support, the trial court ordered Robert to pay the medical insurance premiums and 100 percent of the orthodontia expenses, as well as all medical and dental expenses not covered by insurance, for both children. No itemizations of these costs appears in the child support worksheets or child support order, nor are these costs delineated in the court's findings or oral ruling.

D. Extraordinary Health, Dental, and Orthodontia Expenses

¶47 Robert also argues that the trial court erred in ordering him to pay 100 percent of all the extraordinary medical and dental expenses, including orthodontia, for the children. He cites RCW 26.19.080(2) for the proposition that the trial court was required to split the expense between the parties in the same basic proportion as the child support obligation.

¶48 Angela agrees that normally RCW 26.19.080(2) would prevent the trial court from requiring one parent to pay all extraordinary medical expenses. But she argues that because Robert agreed to pay the children's extraordinary health expenses under the 2000 Agreement, he should continue to pay them as the trial court ordered.

¶49 Robert does not contest Angela's interpretation of the 2000 Agreement. But he argues that (1) the trial court was not bound by their separation agreement concerning

---

[13] Angela testified that the children have extra expenses of $224 per month for dance classes and $600 per month for costumes and sports uniforms, though no receipts are on record.

child support; and (2) instead, the trial court must independently determine child support according to the statutory requirements in chapter 26.19 RCW.

■ ¶50 We agree with Robert that the trial court is not bound by parties' agreements with regard to child support. *Pippins v. Jankelson*, 110 Wn.2d 475, 478, 754 P.2d 105 (1988). We also agree that the trial court must first independently determine child support according to the statutory requirements. But that does not compel the trial court to reject the parties' agreements. It merely allows the trial court to specify its reasons for deviating from the standard calculation. *Pippins*, 110 Wn.2d at 479.

■ ¶51 Extraordinary medical expenses[14] are not included in the standard calculation. RCW 26.19.080(2). The trial court must normally apportion the responsibility for these expenses to parents in the "same proportion as the basic child support obligation." RCW 26.19.080(2).

¶52 As we noted in our prior ruling in this case:

> Child support may be included in the separation contract and shall be reviewed in the subsequent proceeding for compliance with RCW 26.19.020.
>
> Under this statute, separation agreement provisions concerning child support are not binding on the court.

*McCausland*, 2002 WL 1399120, at *3-4, 2002 Wash. App. LEXIS 1499, at *10-11 (citing *In re Marriage of Thier*, 67 Wn. App. 940, 944, 841 P.2d 794 (1992) (holding "[w]e find no error in the court's refusal to enforce the terms of any agreement pertaining to custody")).

¶53 We also permit parties to agree to provide more spousal support than they would otherwise be obligated to pay for maintenance. *In re Marriage of Untersteiner*, 32 Wn. App. 859, 864, 650 P.2d 256 (1982) ("Nothing in law, public policy or reason prohibits a former spouse from *voluntarily* and formally obligating himself or herself to do more than the law requires in providing support for a former spouse."

---

[14] RCW 26.19.080(2) defines extraordinary medical expenses as monthly health care expenses which exceed five percent of the basic support obligation.

(emphasis added)). Robert has not cited, nor have we found, any case suggesting the same is not true for child support. On the contrary, courts have enforced provisions in separation agreements that appeared to benefit the children but which the court would not normally have awarded. *See e.g.*, *In re Marriage of Mahalingam*, 21 Wn. App. 228, 234-35, 584 P.2d 971 (1978) (enforcing an escalation clause in a provision on child support contained in a separation agreement).

¶54 Therefore, we find no merit in Robert's assertion that the trial court is bound to comply with the restrictions in RCW 26.19.080(2) when determining which party should bear the cost of extraordinary medical and dental expenses.

¶55 Here, we have held that the parties' economic situation was changed in a way that compelled the trial court to reject the economic provisions of the 2000 Agreement. Therefore, the trial court must consider all of the parties' circumstances before making a decision about how to apportion the children's extraordinary medical, dental, and orthodontia expenses. On remand, the trial court is directed (1) to determine the standard child support calculation, any extraordinary expenses, the cost of medical, dental, and orthodontia insurance and care; and then (2) to allocate these according to chapter 26.19 RCW, keeping in mind that it may allocate the expenses in a manner different from each parent's percentage of the combined total net income. The record should contain a calculation of the total child support obligation in light of RCW 26.19.065(1), which limits the total obligation to 45 percent of a parent's net income.

¶56 Findings must support any requirement that a parent bear the full cost of any extraordinary expense, or all of the medical, dental, or orthodontia expenses, including insurance costs. As Robert does not contest that he agreed to cover these expenses under the 2000 Agreement, the trial court may decide whether it is appropriate to allocate 100 percent of these expenses to him.

¶57  We reject Robert's invitation to adopt the strictures of Division One in *Daubert*. The trial court has the discretion to set child support based on the overall financial circumstances and resources of the parties, their standard of living during the marriage, and special needs of the children. The trial court may also exceed advisory amounts where the combined income of the parties is over $7,000 and the award does not amount to more than 45 percent of the paying parent's net income. RCW 26.19.065(1); *Clarke*, 112 Wn. App at 379.

¶58  But here, the trial court relied on one parent's current and historical income and the children's participation in activities without proof of the specific claimed expenses; and it did not enter findings on or include the cost of medical insurance premiums, orthodontia expenses, uncovered medical and dental expenses, extraordinary expenses and any other special needs in the child support worksheets, schedule, or order. As a result, the record is insufficient for us to determine whether the expenses are necessary and reasonable, what the total amount of support is or should be, or the proper allocation of support between the parents.

¶59  We do not require the parties to submit receipts for all claimed expenses or to justify extrapolation when combined net incomes exceed $7,000. But when a parent is ordered to pay particular expenses for the children, the record must include what those costs are generally, and the court must consider each parent's ability to share those expenses in light of their economic circumstances and in light of their total child support obligation. RCW 26-.19.065(1), .075, .001; *see Daubert*, 124 Wn. App. at 495.

## IV. ATTORNEY FEES

¶60  Angela argues that the trial court erred in denying her attorney fees under the terms of the 2000 Agreement and thus violated our mandate.

¶61 Robert argues that we (1) did not mandate that the trial court award Angela attorney fees; (2) found that Angela was not entitled to attorney fees under the parties' 2000 Agreement; and (3) merely instructed that if the trial court decided to award fees on remand under RCW 26.09.140, it must state the method used to calculate the fees under the factors set forth in *In re Marriage of Knight*, 75 Wn. App. 721, 730, 880 P.2d 71 (1994). Therefore, Robert argues, the trial court had discretion not to award fees and properly exercised it.

¶62 We held that as "[n]either party was successful in 'enforcing' the terms of the 2000 Agreement at trial . . . . [t]hus neither party was entitled to an attorney fee award under the 2000 Agreement." *McCausland*, 2002 WL 1399120, at *4, 2002 Wash. App. LEXIS 1499, at *13. But we noted that under RCW 26.09.140, a trial court *may* "award reasonable attorney fees after considering the financial resources of both parties. Using its discretion, the court balances the requesting party's need for a fee award against the other party's ability to pay." *McCausland*, 2002 WL 1399120, at *4, 2002 Wash. App. LEXIS 1499, at *13. Observing that "[h]ere, the trial court awarded attorney fees to Angela based on her financial need," we remanded "for reconsideration of an attorney fee award under the statute, based on the relative financial resources of the parties, which it has already considered. If on remand the trial court awards attorney fees under the statute, then it must state on the record the method it used to calculate such award." *McCausland*, 2002 WL 1399120, at *4-5, 2002 Wash. App. LEXIS 1499, at *14 (citation omitted). We also listed the factors the trial court was to consider in making its determination.[15]

---

[15] Specifically we said:

In calculating a reasonable amount of fees, the trial court should consider the following three factors: (1) the factual and legal questions involved; (2) the amount of time necessary for preparation and presentation of the case; and (3) the value and character of the property involved. *In re Marriage of Foley*, 84 Wn. App. 839, 846-47, 930 P.2d 929 (1997); *Knight*, 75 Wn. App. at 730. A party challenging the award has the burden to prove that the trial court abused its

¶63 Angela's argument that the trial court should have awarded her fees under the 2000 Agreement has no merit. We decided this issue in our prior opinion, and the trial court was bound by it. We do not reconsider it now.

¶64 We also agree with Robert that we did not require the trial court to award Angela fees under RCW 26.09.140; we required only that the trial court reconsider the issue in light of enumerated factors. Thus, the trial court had discretion not to award fees to Angela under RCW 26.09.140. Angela does not explain why the trial court's determination was in error, except to say that she believed we required the trial court to award her fees. As this argument fails, we find the trial court did not err in denying Angela attorney fees.

## V. TAX REFUNDS

¶65 Angela agues that the trial court erred in awarding Robert 100 percent of the $396,000 tax refund from the parties' joint tax returns filed in 1997 and 1998, plus 20 years of future deductions, because the issue was not covered by the 2000 Agreement.[16]

¶66 Robert argues that the trial court did not err in finding that the 2000 Agreement awarded "all right, title, and interest in and to the IRS [Internal Revenue Service] refunds" to Robert. CP at 499. He urges that because Angela did not challenge the trial court's finding of fact, it is a verity on appeal. Robert also argues that Angela's argument should fail because she did not set forth a fair statement of facts relevant to the issue she presents for

---

discretion by making a decision that is clearly untenable or manifestly unreasonable. *In re Marriage of Mattson*, 95 Wn. App. 592, 604, 976 P.2d 157 (1999). If on remand the trial court persists in awarding attorney fees to Angela, it must explain its consideration of the above factors and its method of calculation on the record.

*McCausland*, 2002 WL 1399120, at *5 n.7, 2002 Wash. App. LEXIS 1499, at *15 n.7.

[16] The trial court essentially found that since Robert bears the risk in the event of an audit, he should enjoy any gains, whether arising from an audit or any other source.

review, required under RAP 10.3(a)(4); nor did she challenge whether substantial evidence supported the trial court's ruling.

¶67 Angela responds that the 2000 Agreement applies only to an audit, and not, as here, to a spouse's amended filing. Angela also argues that the trial court's finding of fact on this subject was an error of law and, therefore, is appealable "without the assignment of error to the factual finding upon which this error is based."[17] Reply to Resp't Cross Appeal at 2. Angela further argues that the 2000 Agreement awards Robert tax refunds for only 1999, not earlier. Angela urges us to determine that the trial court should have considered its award of the tax refunds when it made its decision on attorney fees using the *Knight* factors. 75 Wn. App. at 732.

¶68 RAP 10.3 (a)(4) requires each party's brief to contain "[a] fair statement of the facts and procedure relevant to the issues presented for review, without argument. Reference to the record must be included for each factual statement." In addition, the parties' argument must contain "citations to legal authority and references to relevant parts of the record." RAP 10.3 (a)(5). Further, appellants must make a

> separate assignment of error for each finding of fact a party contends was improperly made [and it] must be included with reference to the finding by number. The appellate court will only review a claimed error which is included in an assignment of error or clearly disclosed in the associated issue pertaining thereto.

RAP 10.3(g). Unchallenged findings of fact are "verities on appeal." *Knight*, 75 Wn. App. at 732.

¶69 Here, Angela did not assign error to the trial court's finding of fact on this matter, set forth facts relevant to this issue in her statement of the case, or cite a single legal

---

[17] She does not state what this error of law was.

authority for her position in her brief or reply brief. For these reasons, we do not to review her claim.[18]

## VI. ATTORNEY FEES ON CROSS-APPEAL

¶70 Robert argues that he should be awarded attorney fees for responding to Angela's cross-appeal because he is enforcing the terms of the 2000 Agreement relating to attorney fees and the tax refund. In addition, Robert argues he should receive attorney fees under RCW 4.84.330. Angela argues that she, not Robert, is entitled to attorney fees for her cross appeal under the 2000 Agreement and under RCW 26.09.140.

¶71 The 2000 Agreement states:

In the event of an action to enforce the terms of this Agreement by either party, the successful party shall be entitled to his or her reasonable attorney's fees and costs associated with such action.

CP at 72.

¶72 RCW 4.84.330 provides:

[W]here such contract or lease specifically provides that attorney's fees and costs, which are incurred to enforce the provisions of such contract or lease, shall be awarded to one of the parties, the prevailing party, whether he is the party specified in the contract or lease or not, shall be entitled to reasonable attorney's fees in addition to costs and necessary disbursements.

¶73 Though Robert prevailed on the issue of whether the trial court erred in denying an award of attorney fees to Angela, this was not an enforcement of the 2000 Agreement, as we specifically remanded only for determination of whether fees should be awarded on the basis of RCW 26.09.140. Under both the 2000 Agreement and RCW

---

[18] But we may exercise our discretion to review the issue despite "one or more technical flaws in an appellant's compliance with the Rules of Appellate Procedure." *State v. Olson*, 126 Wn.2d 315, 323, 893 P.2d 629 (1995). Here, Angela provides no support for her claim, making it beyond the scope of reasonable, informed appellate review.

4.84.330, only where a party prevails in an enforcement action are they entitled to an award of attorney fees.

¶74 We previously held that neither party substantially prevailed on the terms of the 2000 Agreement and neither was entitled to attorney fees under the agreement. *Mc-Causland*, 2002 WL 1399120, at * 4, 2002 Wash. App. LEXIS 1499, at *11-13. As a result, Robert is not entitled to fees on this appeal under the 2000 Agreement or under RCW 4.84.330. Nor do we award attorney fees to Angela, as she was not a prevailing party under either the 2000 Agreement or RCW 26.09.140.

¶75 We reverse and remand to a different judge for further proceedings in accord with the following:

¶76 Because we vacate the child support order and the property division, on remand the trial court shall determine the appropriate amount of support from the date of the prior remand. In so doing, the trial court shall calculate child support and extraordinary expenses, including medical, dental, and orthodontia expenses, according to chapter 26.19 RCW, and shall state the basis for its finding of extraordinary expenses and its allocation of those expenses between the parents.[19] The trial court shall also determine whether a deviation or extrapolation above the standard calculation is appropriate and the parties' relative needs for, and abilities to pay, maintenance. The trial court shall disregard the economic and support provisions of paragraph 21 of the 2000 Agreement in its entirety.

¶77 The trial court shall determine whether Robert's undifferentiated support payments to Angela from 1998 to the present, including the $5,500 monthly payment and the house maintenance and repair expenses, as well as any additional payments for expenses for the children, are divisible between maintenance and child support nunc pro tunc. We vacate Robert's obligation to pay for major repairs and reasonable maintenance on Angela's residence and

---

[19] The trial court does have the discretion to allocate the expenses to one parent if supported by appropriate findings.

direct the trial court to enter appropriate orders for reimbursement to Robert for expenses he has paid since our earlier remand. The trial court may also consider whether Robert is entitled to reimbursement or restitution from Angela for payments in excess of appropriate child support and maintenance, if any, since our earlier remand.

¶78 Finally, if it is determined that any of the payments or any portion of such payments Robert made to Angela were deductible under the IRS Code, the trial court shall require the parties to cooperate in amending any previous years' tax returns to reflect such deductibility. *See Kean v. Comm'r*, 407 F.3d 186 (3d Cir. 2005).

BRIDGEWATER and HUNT, JJ., concur.

Review granted at 157 Wn.2d 1008 (2006).