48 P.3d 377 (2002)
112 Wash.App. 304
In re Marriage of Dena R. ROSSMILLER, Respondent,
v.
Mark ROSSMILLER, Appellant.
No. 27344-6-II.
Court of Appeals of Washington, Division 2.
June 21, 2002.
*378 John Michael Clark, Vancouver, for Appellant.
Vernon H. McCray, Camas, for Respondent.
SEINFELD, J.
Mark Rossmiller moved for modification of a 1998 parenting plan, seeking alternating weekly residential placement of his daughter. Finding that the trial court applied the correct legal standard when it required Mark to establish a satisfactory history of cooperation with his ex-wife before modifying the parenting plan as he requested and concluding that the trial court did not apply the "friendly parent" concept when it made its determination, we affirm.

FACTS
When Mark and Dena Rossmiller divorced in June 1998,[1] they both apparently sought to be the primary residential parent of their 9-year-old daughter Gabrielle. The trial court adopted a parenting plan that designated Dena as primary residential parent but provided that Gabrielle would reside with her father during the school year, from Wednesday evening to the following Monday morning every other week and overnight on Wednesdays during the alternate week. During the summer, Gabrielle was to alternate residences weekly.
In paragraph 3.13 of the parenting plan, the trial court indicated that it would reconsider a "50/50 joint custody arrangement" if Mark successfully attended counseling:
The Father may Petition for Modification of this Parenting Plan, to request a 50/50 joint custody arrangement, upon a showing of satisfactory completion of counseling with a mental health professional, as recommended by Kirk Johnson, Ph.D., and as stated by the court in its written ruling.[2]
Clerk's Papers (CP) at 4.
In February 2000, Dena petitioned for a modification to the parenting plan to reduce Mark's residential time to alternate weekends, pointing to Mark's role in the conflicts that occurred when they transferred Gabrielle between them, to his refusal to get her to certain extracurricular activities, and to his refusal to participate in mediation.
In response, Mark filed a petition requesting an alternating weekly residential schedule. He based his petition on paragraph 3.13 of the 1998 parenting plan, noting that he had completed the required counseling. Dena had not challenged paragraph 3.13 and apparently did not challenge Mark's modification petition on this basis at trial.
The trial court recognized that Mark did not provide a basis for modification under the "substantial change in circumstances" standard set forth in RCW 26.09.260. But it ruled that Dena's failure to challenge paragraph 3.13 allowed Mark to petition for an equal custody arrangement:
Clearly, none of the [elements of RCW 26.09.260] are met. The sole basis for Mr. Rossmiller's petition is the change of circumstances suggested by the court, that is, that he undergo counseling.
Under a strict application of the statute, Mr. Rossmiller's petition should have been dismissed for lack of adequate cause. The court's permission to seek modification, however, is incorporated into paragraph 3.13 of the parenting plan. As no appeal of this provision was taken, it became the law of the case, and therefore Mr. Rossmiller's *379 petition is properly brought, subject, however, to the continuing requirement of the statute authorizing joint custody. [RCW 26.09.187].
CP at 106-107.
Ultimately, the trial court considered and denied both petitions. It held that although Mark had met the counseling requirements of paragraph 3.13, he failed to establish that he and Dena had "a satisfactory history of cooperation and shared performance of parenting functions" as required under RCW 26.09.187(3)(b)(ii)(B).[3] CP at 69. The trial court also denied Mark's motion for reconsideration.
On appeal, Mark contends that the trial court erred in relying on RCW 26.09.187(3)(b)(ii)B because: (1) his proposed change does not involve the frequent or brief exchanges referred to in the statutes; and (2) his lack of cooperation in making the exchanges is not necessarily determinative of his ability to parent. He also argues that the court should have considered all the factors in RCW 26.09.187(3)(a) for establishing a general parenting plan. Finally, he argues that by considering whether the parents respected and promoted the parenting style of the other, the court adopted a criteria "akin to the `friendly parent' concept" rejected by the Supreme Court. Brief of Appellant at 20.

I. APPLICATION OF RCW 26.09.187(3)(b)(ii)(B)
Generally, we review a trial court's decisions related to a parenting plan for abuse of discretion. In re Marriage of Littlefield, 133 Wash.2d 39, 46, 940 P.2d 1362 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Littlefield, 133 Wash.2d at 46-47, 940 P.2d 1362. But we review a trial court's application of the law de novo. In re Marriage of Flynn, 94 Wash.App. 185, 192, 972 P.2d 500 (1999).
RCW 26.09.187(3)(b)(ii)(B) requires the trial court to find that "[t]he parties have a satisfactory history of cooperation and shared performance of parenting functions" before it can adopt a parenting plan that calls for the child to frequently alternate between his or her parents' households for brief and substantially equal intervals. Mark readily admits that he and Dena have had a "rancorous relationship." Brief of Appellant at 9. But he contends that his proposed parenting plan does not require either frequent changes or brief intervals between changes and, thus, it was error to look to the criteria in RCW 26.09.187(3)(b)(ii)(B).[4]
Although the trial court did not specifically find that Mark's proposed plan required frequent *380 alternations between homes for brief and substantially equal intervals, that finding is implicit in the trial court's application of RCW 26.09.187(3)(b)(ii)(B). Thus, the question here is whether the evidence supports this finding.
The legislature did not specifically define the phrases "frequently alternate" or "brief and substantially equal intervals of time," but the legislative history shows that it did not intend for the safeguards in RCW 26.09.187(3)(b) to prevent equal time arrangements. Instead, the history shows an intent to protect children subjected to frequent residential changes:
This section requires additional protection for children if the parents chose to achieve equal time by moving the children frequently back and forth between the parents' households for brief periods of time. This type of pingpong provision, for a couple days with one parent and a couple of days with the other as a regular schedule can be harmful for children and should be done sparingly.
Littlefield, 133 Wash.2d at 53-54, 940 P.2d 1362 (quoting Senate Journal, 50th Leg. (1987) at 1561 (then Senator Talmadge responding to whether this provision was intended to prevent parents from having equal time with their children)). While the legislative history shows that this statute clearly applies to circumstances where the child changes residence every "couple of days," neither the history nor caselaw provide guidance as to when the interval with each parent is sufficient to overcome the necessity for these protections.[5]
Mark proposed weekly residential schedule changes, approximately 52 times in a year. It is not manifestly unreasonable to view moves of this frequency and intervals of this brief duration as covered by RCW 26.09.187(3)(b)(ii)(B).[6] Accordingly, the trial court did not abuse its discretion in requiring a showing of parental cooperation before adopting this schedule.

II. FRIENDLY PARENT CONCEPT
Mark alleges that in refusing to grant his petition, the trial court applied the "friendly parent" concept. Br. of Appellant at 20.
Under this concept, the court may consider which parent is most likely to foster the child's relationship with the other parent when choosing the primary residential parent. Lawrence v. Lawrence, 105 Wash.App. 683, 687, 20 P.3d 972 (2001). But this jurisdiction has not adopted the concept and Division I recently cautioned against applying it when designing a parenting plan. Lawrence, 105 Wash.App. at 687-88, 20 P.3d 972.
Mark appears to assert that the trial court applied this concept when it denied his petition because it remarked on the couple's inability to cooperate. But as we discussed above, RCW 26.09.187(3)(b)(ii)(B) required the trial court to consider this factor, which it did and accordingly determined that alternating weekly custody was inappropriate.
Further, the trial court's findings show its determination that both Dena and Mark were responsible for their apparent inability to get along and that neither parent was particularly friendly. Thus, this assignment of error fails.
We affirm.
A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, J., and QUINN-BRINTNALL, A.C.J.
NOTES
[1] Dena has remarried and is now known as Dena Picconi.
[2] The court's written ruling states:

Respondent's proposal for a 50-50 joint custody arrangement may be attainable, however, he must first convince me that he has gained insight into, and the tools to cope with, the friction that accompanies his interaction with third-parties, and with Petitioner.
It is encouraging that Respondent testified at trial that he planned to meet with Dr. Johnson to address these concerns. I await Dr. Johnson's further input on Respondent's progress. In the meantime, Ms. Dedona's backup proposal shall constitute the parenting plan in this case.
Respondent may petition for modification upon a showing of satisfactory completion of counseling as recommended by Dr. Johnson.
CP at 76-77.
[3] The court ruled:

Mr. Rossmiller has met the court's requirement that he undergo counseling. The factual issue which must be addressed, however, is whether or not, with the benefit of that counseling, the parties have since demonstrated a satisfactory history of cooperation and shared performance of parenting functions.
Much of the evidence of post-dissolution conflict is datedmuch of it occurred within one year or so after the dissolution. Conflict has decreased in the more recent past, because the parties have restructured exchange arrangements. The lack of communication and cooperation, however, persists, as evidenced by an inability to share insurance information, an inability to achieve reasonable telephone communication, and other aspects of this case. Rather than developing a cooperative, complimentary approach to shared parenting, the parties have retreated into isolationism.
I do not need to make findings that either Petitioner or Respondent is at fault. I think they both are. Regardless of fault, these two people have personality styles which are directly at odds with each other. I doubt if they will ever have the ability to communicate meaningfully. In December 1999, Petitioner made a reasonable request for mediation of problems (Exhibit # 38). Respondent's response was an overbearing, critical and uncalled for diatribe. (Exhibit # 39).
I believe the statute on joint custody calls for an open, communicative relationship, wherein each party respects and promotes the parenting style of the other, like the situation Gabrielle described to Ms. Wedeking. This case is the polar opposite of the paradigm contemplated by law.
I was hopeful that, with counseling, the relationship between Petitioner and Respondent would improve so as to qualify for joint custody. This has not occurred, and the law compels me to deny Respondent's request for modification.
CP at 69-70.
[4] Dena relies on her argument that Mark did not meet the requirements of RCW 26.09.260 and does not address this argument.
[5] Although Mark cites In re Marriage of Wade, 101 Wash.App. 1011, 2000 WL 763771, review denied, 142 Wash.2d 1011, 16 P.3d 1265 (2000), to show that alternating two week intervals are outside of this provision, Wade is an unpublished case that we will not consider. See RAP 10.4(h).
[6] Interestingly, as Mark notes, this schedule would actually reduce Gabrielle's change of residences from her current schedule. But neither Mark nor Dena challenged the current schedule.