# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Matter of the Parenting and Support of<br><br>A.W.<br><br><br>MITCHELL EDWARD WHITE,<br><br>                         Appellant,<br><br>v.<br><br>LINDSAY MARIE SPUCK,<br><br>                         Respondent. | No. 52385-0-II<br><br><br>UNPUBLISHED OPINION |

MAXA, C.J. – Mitchell White appeals the trial court's entry of a final parenting plan designating Lindsay Spuck to provide primary residential care and major decision-making regarding their three-year-old child, AW.

The trial court stated that it would have continued the parties' equal residential time arrangement except White had engaged in the abusive use of conflict. The court stated that RCW 26.09.191 findings for abusive use of conflict applied to White. But conversely, the court later stated in the final parenting plan that it was not imposing a limitation on White under RCW 26.09.191(3) because of the abusive use of conflict. The court also stated in making its residential schedule decision that Spuck was the parent most likely to foster a relationship between AW and her father, which is known as the "friendly parent" concept.

We hold that the trial court must (1) clarify whether the court limited White's residential time with AW under RCW 26.09.191(3)(e) because of White's abusive use of conflict; (2) if so, make express findings whether White's abusive use of conflict created the danger of serious damage to AW's psychological development as required in RCW 26.09.191(3)(e); and (3) determine the residential schedule without considering the "friendly parent" concept. Accordingly, we remand for the trial court to address these issues based on the existing record. However, depending on the best interests of the child at the present time, the trial court on remand is free to reconsider the residential schedule or order a new trial.

FACTS

*Background*

White and Spuck began dating in August 2012. They separated and reconciled multiple times before ending their relationship in March 2015. The parties were separated when Spuck discovered she was pregnant with their child, AW. Spuck gave birth to AW in October 2014.

In May 2015, Spuck made a serious suicide gesture. Apparently after that occurred, Spuck moved in with her parents and White and Spuck agreed to co-parent AW with an informal 50/50 residential schedule. That arrangement continued for almost 21 months.

In February 2017, White filed a petition for a parenting plan. On the same date, he also moved for an ex parte restraining order. In the motion, White alleged that Spuck had "severe mental health issues that endanger herself, me and our child," had attempted suicide at least three times in the past three years, had shot off a gun in their apartment, and had attempted to break into White's home on multiple occasions. Exhibit at 225.

A superior court commissioner entered an immediate ex parte restraining order against Spuck. The order stated that AW would live with White and that Spuck would have limited visitation until a scheduled hearing. The order also stated that Spuck's visitation must be

2

supervised by her parents. Spuck filed a declaration disputing White's allegations. White subsequently filed two declarations making a number of allegations regarding Spuck's multiple suicide attempts, emotional instability, and harassment.

After a hearing, another commissioner entered a temporary parenting plan. The parenting plan stated that AW would reside with White, and limited Spuck's residential time to every other weekend and Tuesday and Thursday evening swim classes. The court subsequently appointed a guardian ad litem (GAL) for AW to investigate a number of issues.

Apparently, the requirement that Spuck's visitation be supervised remained in effect. In October, the court removed the supervision requirement, but all other provisions of the temporary parenting plan remained in force.

For a period of 16 months after White filed his petition for a parenting plan and motion for an ex parte restraining order, White was the primary residential parent of AW and his new wife helped to provide care. Spuck's time with AW essentially was limited to weekends and her time with AW was required to be supervised for almost eight months.

*Trial Court Ruling*

In April 2018, the trial court held a six-day bench trial on the final parenting plan and child support order. The court heard testimony from White, Spuck, the GAL, and several other witnesses.

On June 6, 2018, the court entered a letter ruling designating Spuck as primary residential parent and granting her sole medical and educational decision-making.

Initially, the court noted that White filed his ex parte motion for a restraining order against Spuck "[d]espite the fact that the parties had been co-parenting for 21 months at the time the allegations were made, and none of the allegations had occurred during that 21 month

3

period." Clerk's Papers (CP) at 293. The court stated that the ex parte order changed the status quo regarding the parenting of AW.

In determining the residential schedule, the court analyzed the seven required factors under RCW 26.09.187(3)(a). The court addressed at length the second factor, the agreements of the parties. The court found that "Spuck credibly testified that the parties had an amicable week-on/week-off residential schedule in the 21 months preceding this action (June 2015-February 2017)." CP at 295. This testimony was corroborated by texts and emails between the parties and testimony from other witnesses.

Conversely, the court did not find credible White's claims that Spuck had made co-parenting difficult. And the court found that the "majority" of White's allegations made against Spuck at trial "were proven at trial to be exaggerated, purposely misconstrued, or simply untrue." CP at 296. The court then itemized eight instances where White's allegations were untrue.

The court acknowledged that the GAL had recommended that AW be placed with White. However, the court stated that the GAL report "contained numerous conclusions regarding Ms. Spuck's motivation and intent, which were proven at trial to be erroneous." CP at 298. The court considered the GAL report but disagreed with its findings.

In conclusion, the court stated:

> Under different circumstances, the Court would continue the parties' historical joint custody arrangement without question. However, Mr. White's presentation of this case amounts to an abusive use of conflict. He manufactured an emergency using information that he had been aware of for years concerning Ms. Spuck's mental health. He obtained ex-parte relief placing [AW] with him based upon that information, and alienated Ms. Spuck by supplanting her role in [AW's] life with his new wife. During testimony he displayed anger, controlling behavior, dis[d]ain, a lack of compassion, and a lack of credibility. The Court has no confidence that he would ever promote a relationship between [AW] and her mother, or her mother's family.

> Hence, the Court finds that it is in [AW's] best interests to be placed in the primary care of her mother at this time. Ms. Spuck is the parent most likely to foster a relationship between [AW] and her father, and her father's family.

CP at 299. The court then stated that White could petition for reestablishment of a co-parenting schedule if he agreed to participate in co-parenting counseling.

The court then itemized several conclusions, including that Spuck would be AW's primary residential parent. The court also stated, "RCW 26.09.191 findings for abusive use of conflict that endangers or damages the psychological development of a child (with no parenting limitations) shall apply to Father." CP at 299.

Finally, the court stated, "[d]ue to the unnecessarily litigious nature of this case and Mr. White's abusive use of conflict, this matter was needlessly complicated and prolonged." CP at 300. The court awarded judgment against White in the amount of $30,000 under former RCW 26.26.140 (1994).

The court subsequently entered a final parenting plan, designating Spuck as the primary residential parent with major decision-making authority. The parenting plan stated that White had engaged in abusive use of conflict that endangered or damaged AW's psychological development, but then stated that there were no reasons for limitations under RCW 26.09.191. White appeals the trial court's final parenting plan.

## ANALYSIS

A.   STANDARD OF REVIEW

A trial court has broad discretion in developing a parenting plan. *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012). This discretion is guided by (1) RCW 26.09.184, which states the objectives of a parenting plan and identifies the required provisions; (2) RCW 26.09.187(3)(a), which lists seven factors that the court must consider when adopting

residential provisions; (3) RCW 26.09.002, which declares that the best interests of the child is the standard for determining parental responsibilities; (4) RCW 26.09.191(1)-(2), which provide certain factors that require limitations of a parent's decision making and residential time, and (5) RCW 26.09.191(3), which provides certain factors that permit limitations on any parenting plan provisions. *See Katare*, 175 Wn.2d at 35-36.

We review a trial court's parenting plan for abuse of discretion, which occurs when a decision is manifestly unreasonably or based on untenable grounds or reasons. *In re Marriage of Black*, 188 Wn.2d 114, 127, 392 P.3d 1041 (2017). We determine whether the trial court's findings of fact are supported by substantial evidence, which is evidence " 'sufficient to persuade a fair-minded person of the truth of the matter asserted.' " *Id.* (quoting *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014)). We do not review the trial court's credibility determinations or weigh the evidence, even if we disagree with the trial court. *Black*, 188 Wn.2d at 127.

We are extremely reluctant to disturb child placement decisions "[b]ecause the trial court hears evidence firsthand and has a unique opportunity to observe the witnesses." *In re Parenting & Support of C.T.*, 193 Wn. App. 427, 442, 378 P.3d 183 (2016).

B.    RELIANCE ON ABUSIVE USE OF CONFLICT

White argues that the trial court erroneously concluded that equal residential time was not appropriate because he engaged in an abusive use of conflict. We remand for the trial court to clarify its basis for declining to order equal residential time.

1.    RCW 26.09.191(3)(e) Limitation

Under RCW 26.09.191(3), a court may preclude or limit any provisions of the parenting plan if one of seven factors is present. The rationale for imposing limitations on a parenting plan

is that "[a] parent's involvement or conduct may have an adverse effect on the child's best interests." RCW 26.09.191(3). "The trial court has discretion to determine whether the evidence presented meets the requirements of RCW 26.09.191." *In re Parenting & Support of L.H.*, 198 Wn. App. 190, 194, 391 P.3d 490 (2016).

One of the factors supporting a limitation on parenting plan provisions is an "abusive use of conflict by the parent which creates the danger of serious damage to the child's psychological development." RCW 26.09.191(3)(e).

2.    Trial Court's Inconsistent Rulings

The trial court's ruling in its letter opinion regarding abusive use of conflict is inconsistent with other rulings in the opinion and with the parenting plan findings. As a result, we are unable to review the trial court's residential schedule decision without clarification.

The trial court expressly stated that White's abusive use of conflict was the reason the court was not ordering equal residential time: "Under different circumstances, the Court would continue the parties' historical joint custody arrangement without question. *However*, Mr. White's presentation of this case amounts to an abusive use of conflict." CP at 299 (emphasis added). This statement indicates that the court was imposing a limitation on White's residential time under RCW 26.09.191(3)(e). And in its list of conclusions, the court confirmed that RCW 26.09.191 applied to White because of his abusive use of conflict. But the court in the same sentence stated that the RCW 26.09.191 findings would be "*with no parenting limitations*." CP at 299 (emphasis added).

In the final parenting plan, in the section entitled "3. Reasons for putting limitations on a parent (under RCW 26.09.191)," the trial court listed the following for "b. Other problems that may harm the child's best interests": "Abusive use of conflict – Mitchell E. White uses conflict

7

in a way that endangers or damages the psychological development of a child." CP at 302-303. But in the next section entitled "Limitations on a parent," the court stated, "Does not apply. *There are no reasons for limitations* checked in . . . 3.b. above." CP at 303 (emphasis added).

The trial court's rulings conflict. The court clearly found that White's abusive use of conflict caused it to make Spuck the primary residential parent rather that continuing the existing equal residential time. And the court twice expressly made findings that White had engaged in abusive use of conflict that endangered or damaged the psychological development of a child. But inconsistent with those rulings and findings, the court twice expressly stated that it was *not* imposing limitations under RCW 26.09.191.

We remand for the trial court to clarify whether it limited White's residential time under RCW 26.09.191(3)(e), and if it did, to make written findings supporting its ruling. If the court did not rely on RCW 26.09.191(3)(e) to limit White's residential time, the court must state the legal basis for relying on White's abusive use of conflict to decline to provide equal residential time or identify some other basis for its residential schedule decision.[1]

3. Danger of Psychological Damage

A trial court can limit a parent's residential time under RCW 26.09.191(3)(e) only if the abusive use of conflict "creates the danger of serious damage to the child's psychological development." White argues that there was no evidence that the purported abusive use of conflict harmed AW. Again, we are unable to review this issue without more information from the trial court, and we remand for the trial court to make findings if the court is relying on RCW 26.09.191(3)(e).

---

[1] Because we remand on the abusive use of conflict issue, we do not address whether substantial evidence supports the trial court's finding that White engaged in abusive use of conflict.

8

Initially, White claims that the trial court was required to identify a "relatively severe physical, mental, or emotional harm" to AW as stated in *Chandola*, 180 Wn.2d at 636. However, the court's holding in *Chandola* was that limitations *imposed under RCW 26.09.191(3)(g)*, the catchall provision of RCW 26.09.191, "must be reasonably calculated to prevent relatively severe physical, mental, or emotional harm to a child." *Id.* at 644-48. *Chandola* did not address RCW 26.09.191(3)(e).

Evidence of actual damage to the child's psychological development is not required to impose a limitation under RCW 26.09.191(3)(e). *In re Marriage of Burrill*, 113 Wn. App. 863, 872, 56 P.3d 993 (2002). The required showing is a *danger* of psychological damage. *Id.* And "severe impairment of parent/child contact" can constitute sufficient evidence from which a trial court can find a danger of serious psychological damage to the child. *Id.*

As noted above, the trial court made conclusory statements that White's abusive use of conflict endangered or damaged AW's psychological development. But the court did not make any specific findings on this issue or even discuss the issue in its ruling. On remand, if the court determines that White's residential time is being limited under RCW 26.09.191(3)(e), the court should make express findings as to whether White's abusive use of conflict created the danger of serious damage to AW's psychological development.

C.     CONSIDERATION OF "FRIENDLY PARENT" CONCEPT

White argues that the trial court erred by relying on the "friendly parent" concept to determine residential placement of AW. Spuck concedes that the trial court referred to the friendly parent concept but argues that there is no indication that the trial court relied on this

concept in determining residential placement.[2]  We remand for the trial court to determine

residential placement without considering the friendly parent concept.

       1.    Legal Principles

"Under the 'friendly parent' concept, primary residential placement is awarded to the

parent most likely to foster the child's relationship with the other parent." *In re Marriage of*

*Lawrence*, 105 Wn. App. 683, 687, 20 P.3d 972 (2001).  The court in *Lawrence* stated that the

friendly parent concept is not the law of this state.  *Id.* at 688.  The court noted that the

legislature repeatedly had rejected bills proposing adoption of this concept as a factor in

establishing parenting plans.  *Id.* at 687.  Therefore, the court concluded that "a trial court's use

of the concept in a custody determination would be an abuse of discretion."  *Id.* at 688.

The court stated that the Supreme Court in *In re Marriage of Littlefield*, 133 Wn.2d 39,

48-49, 940 P.2d 1362 (1997), had recognized the legislature's rejection of the friendly parent

concept.  *Lawrence*, 105 Wn. App. at 687.  The court observed in *Littlefield* that "[o]ur state

Legislature . . . year after year has declined to determine that, as a matter of public policy,

frequent and continuing contact with both parents is in the best interests of the child."  133 Wn.

2d at 48-49.

This court in *In re Marriage of Rossmiller* recited the definition of the friendly parent

concept from *Lawrence* and noted that Division One had "cautioned against" applying the family

friendly concept "when designing a parenting plan."  112 Wn. App. 304, 311, 48 P.3d 377

(2002).  The court stated that the friendly parent concept could be used in applying the former

---

[2] Spuck also argues that White is precluded from challenging the trial court's reliance on the friendly parent concept on appeal because White invited any error by raising the concept in closing argument.  But White's argument was in the context of the fifth statutory factor of RCW 26.09.187(3)(a)(v) and cannot be equated with impermissibly inviting the court to rely on the friendly parent concept.

version of RCW 26.09.187(3)(b)(ii)(B) (1989), which allowed the court to order the child to frequently alternate between households if the parents had a satisfactory history of shared parenting functions. But that provision no longer is contained in RCW 26.09.187(3)(b).

2.     Reliance on the Friendly Parent Concept

In its written ruling, the trial court used "friendly parent" language in two places. First, the court stated that under different circumstances it would continue the parties' joint custody arrangement, but White's presentation of the case amounted to an abusive use of conflict. In describing White's abusive conduct, the court stated that it "ha[d] no confidence that [White] would ever promote a relationship between [AW] and her mother, or her mother's family." CP at 299.

Second, the court found that it would be in AW's "best interests to be placed in the primary care of her mother at this time." CP at 299. In the next sentence, the court stated, "Ms. Spuck is the parent most likely to foster a relationship between [AW] and her father, and her father's family." CP at 299. This reference is almost a word for word recitation of the definition of the friendly parent concept in *Lawrence*. *See* 105 Wn. App. at 687. The court then stated that White could petition to reestablish a co-parenting schedule if he participated in co-parenting counseling.

Spuck argues that the trial court would have adopted the same residential schedule even if it had not referenced the family friendly concept. She emphasizes that the court considered in detail each of the RCW 26.09.187(3) factors without referencing that concept. And the court made it clear that the reason it was not continuing the existing co-parenting arrangement was because of White's abusive use of conflict, not the parent friendly concept. Finally, Spuck points

out that the trial court concluded that placing AW in Spuck's primary care was in AW's best interests before mentioning the friendly parent concept.

Spuck is correct that it does not appear that the friendly parent concept was the *primary* reason for the trial court's residential placement decision. However, the court included the observation that Spuck was the parent most likely to foster a relationship with the other parent in its explanation of its decision. And the court stated that it might reestablish co-parenting if White went to co-parenting counseling, which presumably would include counseling on fostering a relationship with the other parent. As a result, it is unclear to what extent the friendly parent concept contributed to the court's decision.

We hold that to the extent that the trial court considered the friendly parent concept, the court erred. On remand, we direct the trial court to determine the residential schedule without considering that concept.

D.    CHALLENGED FINDINGS OF FACT

White argues that substantial evidence does not support a number of the trial court's factual findings and these findings show that the court was biased against him. We disagree.

1.    Finding that Spuck Testified Credibly

White argues that substantial evidence does not support the court's finding that Spuck testified credibly and he did not. But credibility determinations are reserved solely for the trier of fact. *See Black*, 188 Wn.2d at 127. Therefore, we reject this argument.

2.    Finding that Parties Successfully Co-Parented Before Litigation

White argues that substantial evidence does not support the court's finding that the parties successfully co-parented AW prior to the litigation.

The trial court found that Spuck credibly testified that the parties had successful co-parented AW prior to the litigation. Conversely, the court did "not find Mr. White's testimony that Ms. Spuck made the parties' joint custody arrangement difficult to be credible." CP at 297. Further, Spuck's "credible testimony on this issue [wa]s corroborated by numerous emails and text messages between the parties, as well as credible testimony from other witnesses." CP at 293 n. 1. Credibility determinations are reserved solely for the trier of fact. *See Black*, 188 Wn.2d at 127. Therefore, we reject White's argument.

3.    Finding that White Manufactured an Emergency

White argues that substantial evidence does not support the court's finding that he "manufactured an emergency," CP at 299, when he filed his motion for a restraining order. He claims that his motion was based on a well-documented history of Spuck's mental health issues.

Contrary to White's argument, the trial court acknowledged that Spuck had a history of mental health issues. The court found that "Ms. Spuck was a credible witness who . . . has suffered from mental health issues in the past, which included a 2015 suicide attempt." CP at 297. However, the trial court found that the parties had been co-parenting for 21 months and that all of White's allegations related to events that occurred before that period. Therefore, the evidence showed that there was no emergency present when White filed his motions. We reject White's argument.

4.    Finding that Evidence was Inconclusive Regarding Spuck's Suicide Attempts

White argues that substantial evidence does not support the court's finding that the evidence regarding Spuck's past suicide attempts was inconclusive. White claims that these

13

attempts were confirmed during cross-examination of Spuck and supported by her health care records and other evidence.

Substantial evidence supports the trial court's finding. During cross-examination, Spuck admitted to only one suicide attempt on February 9, 2015. And the trial court found Spuck's testimony credible. Therefore, we reject White's argument.

E.     ATTORNEY FEES ON APPEAL

Spuck requests an award of reasonable attorney fees on appeal under (1) RCW 26.26B.060, which give us discretion to order that a party's attorney fees be paid by the other party; (2) based on White's intransigence in the trial court and on appeal, and (3) because the appeal is frivolous under RAP 18.9. We decline to award attorney fees to Spuck under any of these grounds.


CONCLUSION

We remand for the trial court (1) to clarify whether the court limited White's residential time with AW under RCW 26.09.191(3)(e) because of White's abusive use of conflict; (2), if so, to make express findings whether White's abusive use of conflict created the danger of serious damage to AW's psychological development; and (3) to determine the residential schedule without considering the "friendly parent" concept. The trial court can address these issues based on the existing record unless the court decides that the best interests of the child at the present time require a reconsideration of the residential schedule or a new trial.

No. 52385-0-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, C.J.

We concur:

MELNICK, J.

GLASGOW, J.